# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-0534

James P. Barr, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided     June 15, 2007   )

*Jenny Y. Twyford*, of Waterford, Virginia, for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Richard Mayerick*, Deputy Assistant General Counsel; and *Ralph G. Stiehm*, all of Washington, D.C., for the appellee.

Before GREENE, *Chief Judge*, and KASOLD and HAGEL, *Judges*.

GREENE, *Chief Judge*: Veteran James P. Barr appeals through counsel a February 17, 2004, decision of the Board of Veterans' Appeals (Board) denying entitlement to service connection for varicose veins. He argues, inter alia, that the Board erred (1) in its determination that no evidence demonstrated service incurrence of his condition or supported a finding of continuity of symptomatology since service; (2) by relying on an inadequate medical examination; and (3) in its determination that the Secretary complied with his notification duties pursuant to 38 U.S.C. § 5103(a) and the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096. The Secretary argues that (1) a plausible basis exists in the record for the Board's decision; (2) he had no duty to obtain a medical opinion in this case; and (3) Mr. Barr was provided adequate notice. For the reasons set forth below, the 2004 Board decision will be vacated and the matter remanded for further adjudication.

# I. FACTS

Mr. Barr served honorably in the U.S. Army from September 1965 through September 1967. Record (R.) at 14. His induction medical examination report does not note any abnormalities of his vascular system or lower extremities. R. at 17. His separation medical examination reports a history of leg cramps. R. at 34. In October 1996, Mr. Barr filed a claim for disability compensation for varicose veins. R. at 62-63. He claimed that his condition began in the summer of 1966 as a result of daily training runs on hard surfaces while wearing boots. *Id.* He stated that he had been treated in a field hospital at Fort Benning, Georgia, during the summer of 1966, and had also received private treatment since his military discharge. *Id.* A January 1997 VA medical examiner opined that Mr. Barr had varicose veins and venous insufficiency of the legs, more marked on his left leg. R. at 76. The VA examiner noted that none of Mr. Barr's medical records were available for review, but recounted his history of onset during service, and treatment since that time. R. at 75. The examiner did not offer an etiology opinion. A VA regional office (RO) denied the claim (R. at 79-80), and Mr. Barr filed a Notice of Disagreement (R. at 82-83).

In December 1997, Mr. Barr submitted to VA a statement asserting that he filed his claim more than 30 years after his service because he "never had problems with the leg until very recent years" and because his "left leg has looked like hell since 1966, but, the pain has just started." R. at 88. He described the veins in his left leg as "erupting" during the summer of 1966, causing unsightly bulges from above his knee down to and including his foot. R. at 89. He stated that, while in service, he was a medical supply clerk, and that his company included several doctors and "experienced medical specialists" who, on several occasions, observed and considered his varicosities. *Id.* He reported that another person in his company developed worse varicose veins and had them surgically stripped, but that the medical personnel who had observed his condition did not think he required medical treatment. *Id.* He also stated that he did not recall reporting to sick call "to file a formal complaint" because it would have seemed odd to have done so after having discussed his condition at length with the medical personnel with whom he worked closely. *Id.* He reiterated these same contentions in more detail during a Board hearing in June 1997. R. at 114-32. At that time he also recounted several private physicians whom he had seen over the previous 30 years for other conditions, to whom he had mentioned his varicose veins. R. at 125-29.

In October 2001, the Board remanded the case and directed the RO to (1) ensure compliance with all VA notification requirements; (2) request that Mr. Barr identify all VA and non-VA medical treatment providers and authorize VA to attempt to obtain pertinent treatment records; and (3) "specifically instruct[] [Mr. Barr] to submit competent evidence to support his assertions that he had developed varicose veins during service." R. at 137-38. The RO sent Mr. Barr a letter in November 2001 with the stated purpose, inter alia, of advising him of "what evidence is necessary to establish entitlement to the benefit you want." R. at 141. The letter referred to Mr. Barr's claim for service connection for varicose veins and stated that in order to establish entitlement the evidence must show (1) an injury or disease that began or was made worse in service, or an event in service causing injury or disease; (2) a current disability; and (3) a relationship between the current disability and an injury, disease, or event in service. R. at 141-42. The letter requested that Mr. Barr sign enclosed medical authorization forms to enable VA to contact the healthcare providers he had previously referred to and attempt to obtain any relevant medical records. *Id.* Finally, the letter also advised Mr. Barr to "submit competent evidence to support [his] assertions that [he] developed varicose veins during service." R. at 143. The record does not demonstrate that Mr. Barr responded to that November 2001 notice. Following an October 2003 Supplemental Statement of the Case (R. at 146-65), the Board issued the decision here on appeal.

In denying Mr. Barr's claim, the February 17, 2004, Board initially found that VA had complied with all VCAA notification requirements. R. at 6. The Board then determined that the preponderance of the evidence was against the claim for service connection. The Board considered the January 1997 diagnosis of varicose veins, but found: "[T]he medical evidence does not show that his currently demonstrated varicose veins were present in service or for many years thereafter or that any such current disability was caused by any incident or event in service." R. at 8-9. The Board considered Mr. Barr's testimony regarding the onset of his condition, but denied the claim for lack of evidence in support of those assertions. *See* R. at 9 ("The service medical records do not serve to confirm the onset of varicose veins . . . [and he] has submitted no competent evidence to show that the varicose veins are due to disease or injury in service . . . [nor] has [he] submitted . . . evidence to support these assertions . . . . [The] Board has considered the veteran's arguments, particularly in regard to the onset of his current disability. However, the veteran is a layman and not competent to offer an opinion as to questions involving medical diagnosis or causation as

3

presented in this case."). The Board concluded that the record contains "no convincing evidence that the veteran's currently demonstrated varicose veins had their clinical onset in service." *Id*. This appeal followed.

## II. SERVICE CONNECTION AND
## CONTINUITY OF SYMPTOMATOLOGY

### A. Arguments of the Parties

Mr. Barr argues that reversal of the Board's decision is appropriate because his statements from 1996 forward constitute a "noting" that his varicose veins started in service and have persisted continuously since 1966, and thus provide competent evidence of continuity of symptomatology entitling him to service connection pursuant to 38 C.F.R. § 3.303(b) (2006) and *Savage v. Gober*, 10 Vet.App. 488 (1997). As a basis for that assertion, he avers that varicose veins are a condition capable of lay observation, and therefore, the Board erred when it rejected his lay statements as not competent and denied the claim based on a lack of supporting medical evidence. He further contends that the Board erred when it failed to provide an adequate statement of reasons or bases for its determination that "'the evidence of record does not support his assertions of having had . . . a continuity of symptomatology.'" Appellant's Brief (Br.) at 7-8 (quoting R. at 9).

In response, the Secretary argues that *Savage* does not support Mr. Barr's claim because, although a lay person is competent to describe observations regarding veins, an interpretation of whether those symptoms amount to a diagnosis of varicose veins requires medical expertise. Secretary's (Sec'y) Br. at 8-9. He further contends that, even assuming Mr. Barr is competent to diagnose varicose veins, the 27-year hiatus between Mr. Barr's separation examination from service and his first diagnosis of varicose veins gave the Board a plausible basis to conclude that "'the evidence of record does not support his assertions of having had related in[-]service manifestations or a continuity of symptomatology or treatment thereafter.'" *Id*. at 8 (quoting R. at 9).

### B. Law

Establishing service connection *generally* requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. *See Caluza v. Brown*, 7 Vet.App. 498, 506

4

(1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *see also Hickson v. West*, 12 Vet.App. 247, 253 (1999); 38 C.F.R. § 3.303. Under § 3.303(b), and of relevance here, an alternative method of establishing the second and/or third *Caluza* element is through a demonstration of continuity of symptomatology. *See Savage*, 10 Vet.App. at 495-97; *see also Clyburn v. West*, 12 Vet.App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of postservice continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the postservice symptomatology. *Savage*, 10 Vet.App. at 495-96; *see Hickson*, 12 Vet.App. at 253 (lay evidence of in-service incurrence sufficient in some circumstances for purposes of establishing service connection); 38 C.F.R. § 3.303(b). The Board's determination on continuity of symptomatology is a finding of fact reviewed by this Court under the "clearly erroneous" standard of review. *Savage*, 10 Vet.App. at 496.

Significant in our caselaw is that lay persons are not competent to opine as to medical etiology or render medical opinions. *See Grover v. West*, 12 Vet.App. 109, 112 (1999); *Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992). Lay testimony *is* competent, however, to establish the presence of observable symptomatology and "may provide sufficient support for a claim of service connection." *Layno v. Brown*, 6 Vet.App. 465, 469 (1994); *see also Falzone v. Brown*, 8 Vet.App. 398, 405 (1995) (lay person competent to testify to pain and visible flatness of his feet); *Espiritu*, 2 Vet.App. at 494-95 (lay person may provide eyewitness account of medical symptoms). The Court has emphasized that "symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." *Savage*, 10 Vet.App. at 496 (citing *Wilson v. Derwinski*, 2 Vet.App. 16, 19 (1991)). Once evidence is determined to be *competent*, the Board must determine whether such evidence is also *credible*. *See Layno*, *supra* (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")).

In *Savage*, the Court considered when and how a condition could be "noted" in service. There the veteran had presented postservice testimony regarding an in-service fall that had caused him to limp since service. *Savage*, 10 Vet.App. at 496-97. The Court held that if the condition was one "as to which a lay person's observation is competent," medical evidence of "noting" was not

necessarily required. *Id*. at 497. Presuming Mr. Savage's testimony regarding his in-service fall credible, the Court held sworn testimony alone sufficient to establish an in-service "noting," and that no specific in-service medical notation, let alone diagnosis, was required. *Id*. (holding veteran's statements, "in and of themselves, sufficient to show continuity of symptomatology" for well-groundedness purposes). The *Savage* Court went on to hold, however, that notwithstanding the veteran's showing of postservice symptomatology, the question of whether his arthritis was related to his in-service fall was a question of etiology requiring medical expertise. *Id*. at 497-98; *see also Clyburn*, 12 Vet.App. at 301 (recognizing medical evidence is not required to demonstrate relationship between present disability and continuity of symptomatology if conditions are such that lay person's observations are competent, but finding Mr. Clyburn "not competent to testify to the fact that what he experienced in service and since service is the same condition he is currently diagnosed with," when claim was for service connection for knee condition and Court was presented only with evidence of in-service knee problems, current diagnosis of chondromalacia patellae or degenerative joint disease, and veteran's lay testimony of nexus).

## C. Analysis

The type of evidence that will suffice to demonstrate entitlement to service connection, and the determination of whether lay evidence may be competent to satisfy any necessary evidentiary hurdles, depends on the type of disability claimed. *See Falzone*, 8 Vet.App. at 406. Thus, to address the parties arguments here, the Court must determine whether (1) varicose veins is a condition that a lay person is competent to identify, and (2) if so, whether the Board erred in its adjudication and consideration of the evidence in support of Mr. Barr's claim. For the following reasons, we hold that the answer to both of these questions is yes.

### 1. Lay Observations and Varicose Veins

The Secretary argues, and the Board implicitly held, that the presence of varicose veins is a medical determination that must be supported by competent evidence, beyond that which may be offered by lay testimony. Because of the unique nature of varicose veins, we disagree. Varicose veins are "[e]longated, dilated, tortuous superficial veins (usually in the legs) whose valves have become incompetent, permitting reversed flow in the dependent position." THE MERCK MANUAL 590 (16th ed. 1992) [hereinafter MERCK]; *see also* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 2008 (30th ed. 2003) [hereinafter DORLAND'S] (defining "varicose veins" as veins that are

6

"unnaturally and permanently distended"); WEBSTER'S MEDICAL DESK DICTIONARY 751 (1986) [hereinafter WEBSTER'S] (defining "varicose" as "abnormally swollen or dilated" and "varicose vein" as "an abnormal swelling or tortuosity . . . of a superficial vein of the legs"). MERCK further states: "The patient usually makes the diagnosis of varicose veins, but their extent is usually greater than can be determined by simple inspection and can be judged accurately only by palpitation with the patient standing." MERCK at 590. As to symptoms, MERCK states: "Initially, superficial veins are tense and may be palpitated but are not visible. Subsequently, they become visibly dilated and tortuous; the diagnosis is then obvious to the patient." *Id*. "Varicose veins are incurable irrespective of the method of treatment." *Id*. at 592. Once service connected, varicose veins are rated pursuant to Diagnostic Code (DC) 7120, which, inter alia, assigns a noncompensable rating for "asymptomatic palpable or visible varicose veins," and a 10% disability rating for "intermittent edema . . . or aching and fatigue in leg after prolonged standing or walking, with symptoms relieved by elevation . . . or compression hosiery." 38 C.F.R. § 4.104, DC 7120 (2006).

"As a general matter, in order for any testimony to be probative of any fact, the witness must be competent to testify as to the facts under consideration." *Layno*, 6 Vet.App. at 469 (citing *Espiritu, supra*). In *Falzone*, the Court stated that the veteran's description of his flat feet was not a determination that was "medical in nature" and, therefore, lay testimony may "suffice by itself" to show the presence of such condition. 8 Vet.App. at 405-06; *see Layno, supra* (lay evidence is competent to establish features or symptoms of injury or illness); *see also Charles v. Principi*, 16 Vet.App. 370, 374 (2002) (appellant is competent to testify concerning symptoms capable of lay observation). *But see Epps v. Brown*, 9 Vet.App. 341, 344 (1996), *aff'd*, 126 F.3d 1464 (Fed. Cir. 1997) (requiring medical evidence to show that skin condition caused blood clots that ultimately resulted in heart condition). Similarly, the Court has found a veteran competent to testify as to a condition within his knowledge and personal observation. *See Bruce v. West*, 11 Vet.App. 405, 410-11 (1998) (finding veteran competent to describe dry, itchy, scaling skin). *But see Layno, supra* (cautioning that lay testimony that veteran suffered a particular illness (bronchial asthma) was not competent evidence because matter required medical expertise).

We conclude here that a lay person is competent to identify veins that are unnaturally distended or abnormally swollen and tortuous. *See* WEBSTER'S and DORLAND'S, both *supra*. Although the symptoms of the initial stage of varicose veins (which MERCK identifies as exhibiting

tense superfiscial veins) do not appear to be capable of lay observation, we conclude that veins that have become visibly tortuous or dilated are observable and identifiable by lay people. We further hold that because varicose veins may be diagnosed by their unique and readily identifiable features, the presence of varicose veins is not a determination "medical in nature" and is capable of lay observation. *See Falzone, supra*; MERCK at 590 ("[T]he diagnosis [of varicose veins] is then obvious to the patient.").

### 2. Board's Varicose-Veins-Merits Determination

In concluding that the preponderance of the evidence was against the claim, the Board stated that Mr. Barr had submitted "no competent evidence" of in-service incurrence of his varicose veins. R. at 8-9. The Board repeatedly emphasized that the lack of medical evidence and lack of support or confirmation of Mr. Barr's assertions was fatal to the claim. *Id.* In light of our holding that a lay person may be competent to observe varicose veins, the Board's reasoning for denying the claim is flawed. *See Buchanan v. Nicholson*, 451 F.3d 1331, 1335 (Fed. Cir. 2006) (stating "competent lay evidence can be sufficient in and of itself" to obtain disability benefits).

Mr. Barr testified repeatedly during the adjudication of his claim that the onset of his varicose vein condition occurred in service and that he has suffered from that condition continuously since then. *See* R. at 75, 88-89, 115-30. The Board determined that Mr. Barr was not competent to provide such evidence. *See* R. at 9 (veteran "has submitted no competent evidence" of continuity of symptomatology). Although the Board would have been within its province to have weighed that testimony and to have made a credibility determination as to whether that evidence supported a finding of service incurrence and continuity of symptomatology sufficient to establish service connection, the Board erred in outright refusing to consider it as competent. *See Buchanan*, 451 F.3d at 1337 ("Board, as fact finder, is obligated to, and fully justified in, determining whether lay evidence is credible in and of itself, i.e., because of possible bias, conflicting statements, etc."); *see also McLendon v. Nicholson*, 20 Vet.App. 79, 84 (2006) (when subject is one to which lay person is "competent" to testify, such "testimony can be rejected only if found to be mistaken or otherwise deemed not credible"); *Layno*, *supra*. In essentially dismissing Mr. Barr's assertions as not competent, the Board committed prejudicial error in failing to adequately consider material evidence favorable to the claim. *See Caluza*, 7 Vet.App. at 506 (Board must provide reasons for its rejection of any material evidence favorable to claimant); *see also Gutierrez v. Principi*, 19 Vet.App.

8

1, 9 (2004) (finding Board's reasoning flawed when it failed to discuss adequately evidence in support of claim); 38 U.S.C. § 5103A(d)(2) (Secretary must take into consideration all lay or medical evidence of record, including statements of claimant); 38 C.F.R. § 3.303(a).

Accordingly, for this reason combined with the other errors addressed below, the Board's decision will be vacated, and the matter remanded for readjudication. On remand, the finder of fact must consider the credibility and weight of Mr. Barr's statements, and any other competent lay or medical evidence submitted, to determine whether he is entitled to service connection based on continuity of symptomatology. *See* 38 U.S.C. § 5103A(d)(2); 38 C.F.R. § 3.303(b). As emphasized in *Buchanan*, the Board may not reject as not credible any uncorroborated statements merely because the contemporaneous medical evidence is silent as to complaints or treatment for the relevant condition or symptoms. *See Buchanan*, 451 F.3d at 1336-37; *see also McLendon*, 20 Vet.App. at 84 (stating that competent testimony "can be rejected only if found to be mistaken or otherwise deemed not credible, a finding the Board did not make and the Court cannot make in the first instance").

### III. ADEQUACY OF MEDICAL EXAMINATION

The Secretary has a duty to assist claimants and must "make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit." 38 U.S.C. § 5103A(a)(1). As a part of his duty to assist claimants, the Secretary must provide a medical examination or obtain a medical opinion "when such an examination or opinion is necessary to make a decision on the claim." 38 U.S.C. § 5103A(d)(1). A medical opinion is adequate when it is based upon consideration of the veteran's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's "'evaluation of the claimed disability will be a fully informed one.'" *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994) (quoting *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991)).

The record supports Mr. Barr's argument that the January 1997 VA examination report upon which the Board relied was inadequate because the VA examiner failed to review Mr. Barr's prior medical records and did not provide an opinion as to whether Mr. Barr's varicose veins were related to service. The examiner explicitly stated that he did not have the claims file to review. R. at 75. It is well established in the Court's jurisprudence that a thorough medical examination is one that

"takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one." *Green*, 1 Vet.App. at 124; *see also Cox v. Nicholson*, 20 Vet.App. 563, 568-69 (2007); 38 C.F.R. § 4.1 (2006). Further, we note that the VA examiner did not indicate whether he considered Mr. Barr's assertions of continued symptomatology. *Cf. Ardison*, 6 Vet.App. at 407 (opinion is adequate when based on consideration of veteran's prior medical history and examinations and also describes disability in sufficient detail so that Board's evaluation will be fully informed). For these reasons, the Board erred.

Further, the Secretary appears to argue that any inadequacy in the January 1997 examination was nonprejudicial because the Secretary had no duty to provide the examination in the first instance when there was no medical evidence showing varicose veins in service, and because the Board rejected Mr. Barr's claimed history of continuity of symptomatology. For the reasons that follow, this argument is not persuasive.

First, the Board never rendered a finding that a medical examination was not warranted and the Secretary's argument that it was not needed is rejected as post hoc rationalization. *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156 (1991) ("'Litigating positions' are not entitled to deference when they are merely appellate counsel's 'post hoc rationalizations' for agency action, advanced for the first time in the reviewing court."). Further, once the Secretary undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, he must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided. *See Daves v. Nicholson*, 21 Vet.App. 46, 52 (2007) ("Due process requires the Secretary to notify the claimant prior to the adjudication of the claim of his inability to obtain evidence he has undertaken to obtain, so that the claimant has a fair and reasonable opportunity to try and secure it or procure alternative evidence at a time when such information will be most useful to the adjudicator."); *Sanders v. Principi*, 17 Vet.App. 232 (2003) (highlighting veteran-friendly nature of VA adjudication process, and stating that when hearing examiner promised a medical examination but VA did not provide one, Board must explain in its decision why it "would not or need not provide the promised examination"); *see also Stegall v. West*, 11 Vet.App. 268, 270-71 (1998) (remanding where VA examination was "inadequate for evaluation purposes"); *Hicks v. Brown*, 8 Vet.App. 417, 422 (1995) (concluding that inadequate medical evaluation frustrates judicial review). Even assuming, arguendo, that a VA medical examination

10

was not required by law in this case, because VA undertook to provide one, the Board erred in failing to ensure it was adequate or to otherwise notify Mr. Barr as discussed above.

## IV. REMEDY

Although Mr. Barr argues for reversal, remand is the appropriate remedy where the Board has incorrectly applied the law or failed to provide an adequate statement of reasons or bases for its determinations. *Tucker v. West*, 11 Vet.App. 369, 374 (1998). This is not a situation where the only permissible view of the evidence is contrary to the Board's decision. *See Johnson v. Brown*, 9 Vet.App. 7, 10 (1996). Accordingly, because VA must make the credibility determinations necessary to resolve Mr. Barr's service-connection claim, remand, as opposed to reversal, is the appropriate remedy. *See Gutierrez*, 19 Vet.App. at 10. During remand, any issues surrounding notice and the application of the correct law may be raised. Therefore, we need not address here Mr. Barr's arguments concerning the Secretary's compliance with his notification duties. *Mahl v. Principi*, 15 Vet.App. 37 (2001) (Court will rarely address issues unnecessary to its decision). Further, on remand Mr. Barr may present additional evidence and argument in support of his claim, and the matter is to be provided expeditious treatment. *See* 38 U.S.C. §§ 5109B, 7112; *Kay v. Principi*, 16 Vet.App. 529, 534 (2002). In adjudicating Mr. Barr's claim, VA must give consideration as to whether continuity of symptomatology is to be presumed based on the unique nature of varicose veins. *See* MERCK at 592 ("Varicose veins are incurable irrespective of the method of treatment.")

## V. CONCLUSION

The Board's February 17, 2004, decision is VACATED, and the matter is REMANDED for further adjudication consistent with this opinion.

11