Citation Nr: 1045625 
Decision Date: 12/06/10 Archive Date: 12/14/10

DOCKET NO. 05-17 102 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, 
Florida

THE ISSUE

Entitlement to service connection for an eye disorder manifested 
by blurred vision with watering eyes. 

REPRESENTATION

Veteran represented by: The American Legion

ATTORNEY FOR THE BOARD

T. R. Bodger

INTRODUCTION

The Veteran served on active duty from September 1975 to 
September 1979.

This matter comes before the Board of Veterans' Appeals (Board) 
on appeal from a July 2003 rating decision of the Department of 
Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, 
Florida, which denied the benefit sought on appeal. 

A review of the record on appeal shows that the Veteran, in his 
May 2005 VA Form 9, requested a hearing before a traveling 
Veterans Law Judge at the RO. The record indicates that the 
Veteran failed to appear for his scheduled hearing in April 2007. 
Accordingly, VA adjudication of the current appeal may go forward 
without scheduling another hearing. 

In April 2009, the Board remanded this matter for further 
evidentiary development, to include obtaining additional VA 
treatment records, service clinical and/or private hospital 
records, a VA examination, and to permit the Veteran's 
representative to furnish a more substantive Form 646. The RO 
substantially complied with every directive except obtaining an 
adequate VA examination. Stegall v. West, 11 Vet. App. 268, 271 
(1998). 

As such, this matter is again remanded to the RO via the Appeals 
Management Center (AMC), in Washington, DC. 

REMAND

Reason for Remand: To obtain an adequate VA examination. 

By way of background, the Veteran's eyes were clinically found to 
be normal and his eyesight was 20/20 bilaterally at his August 
1975 service entrance examination. He also denied eye trouble at 
that time. There are no service records indicating complaints 
of, or treatment for, eye problems. During his June 1979 
separation examination, the Veteran's eyes were again found to be 
clinically normal and his vision was 20/20 bilaterally. However, 
on his Report of Medical History dated in June 1979, the Veteran 
indicated that he had eye trouble. Unfortunately, there is no 
explanation on the report about the nature of the eye trouble. 
Nevertheless, he was found qualified for discharge. 

In his May 2005 VA Form 9, the Veteran indicated that he had 
received in-service treatment for an eye injury that occurred 
while he was stationed in "Swinefurt" (Schweinfurt), Germany. 
Because the RO had not attempted to obtain these records, the 
Board remanded this matter to locate clinical records and/or 
private treatment records of the Veteran's alleged treatment 
while stationed in Schweinfurt, Germany. In a June 2009 letter, 
the Veteran was asked whether his in-service treatment for the 
eye injury was in a military or private facility and requested 
that if such treatment was from a private facility to complete a 
release of information form for that hospital. No response was 
received. In August 2010, the RO submitted a PIES request for 
clinical records for an eye injury with treatment at Schweinfurt 
Germany Army Base in 1977. In September 2010, the RO received a 
negative reply from PIES stating that no records were found. In 
September 2010, the Veteran was notified of the negative reply 
and asked to submit any additional information in his possession. 
The Veteran did not submit an additional response and no 
additional records have been obtained. 

Following the April 2009 Board remand, VA treatment records from 
the VA Medical Center in Tampa, Florida were obtained. These 
records indicate that the Veteran sought treatment for his eye 
problems in July 2002 and continued to complain of burring vision 
with watery discharge through May 2008. The July 2002 treatment 
note provides that the Veteran's bilateral eye blurring with 
watery discharge started about two months prior (i.e., in May 
2002). He was diagnosed with probable accommodation weakness 
with allergy/dry eyes. In the October 2002 report, the Veteran 
complained of blurred vision and seeing spots after being exposed 
to a laser in service. In a June 2003 treatment note, the 
Veteran again complained of persistent ocular irritation with 
excess tearing and intermittent pruritus. He was diagnosed with 
dry eyes vs. allergic conjunctivitis and treated with eye drops. 
In a February 2007 treatment note, the Veteran had a routine eye 
examination and again complained of blurring of near vision and 
tearing. The examiner indicated that the Veteran was exposed to 
lasers while on active duty. The Veteran was examined and 
assessed with refractive error: myopia with presbyopia. In March 
2007, the Veteran complained of a painful nodule in his right eye 
and was diagnosed with right eye sty/chalazia. In May 2008, the 
Veteran complained of burning, itching and watering of his eyes 
which has persisted for 20 plus years. He was again diagnosed 
with a refractive error and eye irritation. 

In March 2010, the Veteran was scheduled for a VA examination 
where he again reiterated his complaints of blurriness, burning 
sensation, watery eyes, and blind spots in vision in both eyes as 
a result of being exposed to a laser target range finder while in 
service in Germany in 1977 or 1978. The Veteran indicated being 
treated with patches placed on his eyes for about one month 
following the incident and then being given light duty for a 
couple of months thereafter. Since that incident, the Veteran 
reported that his vision has gotten progressively worse; he has 
experienced blurry and watery eyes; and suffered from blind 
spots. The Veteran denied pain, diplopia, malignant neoplasm, or 
current ophthalmologic treatment. The Veteran's distance vision 
uncorrected was 20/40 bilaterally and his near vision uncorrected 
was 20/200 in his right eye and 20/400 in his left eye. His 
pupils were equally round and reactive to light. Both eyes had 
decreased tear break-up time, and the macula, vasculature and 
peripheral retina of the right eye were clear. The macula of the 
left eye had one dot hemorrhage inferio-nasally. The vasculature 
was normal in the left eye. There were no holes, tears, or 
retinal detachments noted. The examiner then opined that the 
Veteran's blurriness, watering eyes, and other symptoms are not 
caused by an in-service eye injury or exposure to a laser target 
range finder. Instead, these symptoms were the result of 
uncorrected refractive error and dry eyes. 

Unfortunately, the Board finds that this examination is not 
adequate and does not fully comply with the April 2009 Board 
remand. First, the Board directed that the VA examiner to review 
the clams file and render an opinion regarding the etiology of 
any eye disorder found. The Board then asked that the examiner 
provide a clear rationale for all opinions. As will be discussed 
in more detail below, there is no indication that the March 2010 
VA examiner reviewed the claims file. Further, while the 
examiner provided that the Veteran's eye condition was caused by 
uncorrected refractive error, as opposed to being related to an 
in-service injury, she did not provide any rationale or 
explanation for her opinion. As such, a remand is necessary to 
comply with the Board's April 2009 directives. Stegall v. West, 
11 Vet. App. 268 (1998). 

There is no indication that the March 2010 examiner reviewed the 
Veteran's claims file, to include his service treatment files or 
VA medical records as there is no comment on the Veteran's 
current or past treatment. The examiner did not diagnose the 
Veteran with any eye disorder and indicated that the Veteran's 
symptoms of blurred vision and watery eyes were caused by 
uncorrected refractive error. However, the VA treatment records 
dated in May 2008 indicate that the Veteran was provided a 
prescription for his refractive error. As such, the Veteran's 
refractive error appears to have been corrected, and this makes 
the March 2010 examiner's finding that the symptoms of blurred 
vision and watery eyes were caused by uncorrected refractive 
error unclear without further explanation from the examiner. On 
remand, a VA examiner should address this opinion given that it 
appears that the Veteran's refractive error has been corrected 
and the Veteran still reports continued problems of blurred 
vision and water eyes. 

The Board observes that the United States Court of Appeals for 
Veterans Claims (Court), in Barr v. Nicholson, 21 Vet. App. 303, 
311 (2007), found that a medical opinion is adequate if it 
provides sufficient detail so that the Board can perform a fully 
informed evaluation of the claim. Here, as discussed above, the 
examination findings, set out as part of the March 2010 VA 
examination report, are not adequate to enable the Board to 
provide a fully informed evaluation of the Veteran's claim and do 
not comply with the April 2009 Board remand. As such, additional 
action is therefore required. Stegall v. West, 11 Vet. App. 268 
(1998). 
 
Accordingly, the case is REMANDED for the following action:

1. The Veteran should be scheduled for a VA 
examination to determine any diagnosis of 
an eye disorder and assess whether any 
such eye disorder is at least as likely as 
not etiologically related to service, to 
include the Veteran's reported in-service 
eye injury from lasers. The claims folder 
and a copy of this Remand must be made 
available to, and be reviewed by, the 
examiner prior to the examination, and the 
examiner must acknowledge review of such. 
The examiner should accomplish any 
indicated special tests, studies or 
additional consultations. 

Specifically, the examiner should comment 
on the Veteran's statements regarding his 
complaints of blurred vision and watery 
eyes since his alleged in-service injury; 
the VA treatment records from the VA 
Medical Center in Tampa, Florida which 
indicate continued complaints of blurred 
vision and watery eyes; and the May 2008 
VA treatment note when he was diagnosed 
with refractive error and given a 
prescription. The examiner is asked to 
comment on the March 2010 medical opinion 
and how the evidence that the Veteran's 
refractive error was corrected affects 
this medical conclusion. The examiner is 
also asked to comment on whether any 
currently diagnosed eye disability is a 
congenital defect or refractive error. 
For any eye disorder that is not a 
congenital defect or refractive error, the 
examiner should provide an opinion as to 
whether it is at least as likely as not 
(50 percent probability or greater) that 
any current disability of the eye arose 
during service or is otherwise related to 
service. The examiner also should, to the 
best of his or her ability, list all other 
potential causes or factors for the 
Veteran's eye disorder. A rationale for 
all opinions expressed should be provided.

2. Then, after ensuring the VA examination 
report is complete, the RO should 
readjudicate the claims on the merits. If 
the benefits sought are not granted, the 
Veteran and his representative should be 
furnished a supplemental statement of the 
case and afforded a reasonable opportunity 
to respond before the record is returned 
to the Board for further review.

The Veteran has the right to submit additional evidence and 
argument on the matter or matters the Board has remanded. 
Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law 
requires that all claims that are remanded by the Board of 
Veterans' Appeals or by the United States Court of Appeals for 
Veterans Claims for additional development or other appropriate 
action must be handled in an expeditious manner. See 38 U.S.C.A. 
§§ 5109B, 7112 (West Supp. 2010).

_________________________________________________
KATHLEEN K. GALLAGHER
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the 
Board of Veterans' Appeals is appealable to the United States 
Court of Appeals for Veterans Claims. This remand is in the 
nature of a preliminary order and does not constitute a decision 
of the Board on the merits of your appeal. 38 C.F.R. 
§ 20.1100(b) (2010).