Citation Nr: 1132124 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 08-11 040 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for a cervical disability to include as secondary to service-connected residuals of thoracic injury with Scheuermann's disease, compression fractures of T-9 and T-10, with wedging deformities, T7-T9.

2. Entitlement to service connection for a lumbar disability to include as secondary to service-connected residuals of thoracic injury with Scheuermann's disease, compression fractures of T-9 and T-10, with wedging deformities, T7-T9.


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

S. Heneks, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1980 to April 1981.

This matter comes before the Board of Veterans' Appeals (BVA or Board) on appeal from a May 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. 

In a July 2010 decision, the Board reopened the claim for service connection for degenerative disc disease of the cervical spine and remanded the matter for adjudication on the merits. With regard to the claim for service connection for degenerative disc disease of the lumbar spine, the decision is less clear. 

In its findings of facts and conclusions of law, the Board found that new and material evidence had been received to reopen both claims. However, the order only reopened the claim for a cervical spine disability. In the remand, the Board discussed that the May 2007 rating decision reopened the claim for the lumbar spine disability but then denied reopening in the October 2007 statement of the case (SOC) and October 2008 supplemental statement of the case (SSOC). The Board remanded the claim for a lumbar disability for the RO to address the underlying claim for service connection on the merits. The Board finds that the intention of the Board, as evidenced by its findings of fact, conclusions of law, and remand for a SOC for the RO to address the claim on the merits, was to reopen the claim for a lumbar spine disability. See Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001); Barnett v. Brown, 83 F.3d 1380 (Fed. Cir. 1996). (The Board must consider the question of whether new and material evidence has been received because it goes to the Board's jurisdiction to reach the underlying claim and adjudicate the claim de novo.) Accordingly, the matters now on appeal have been characterized as reflected above. (Additionally, the Board has recharacterized the issues more generally, i.e. cervical and lumbar disability, to fully encompass the Veteran's claims.)

Following the July 2010 Board remand, the Veteran presented testimony at a personal hearing conducted at the Waco RO before a different Veterans Law Judge (VJL) who was designated by the Chairman to conduct the hearing pursuant to 38 U.S.C.A. § 7107(c) (West 2002) and who is rendering the determination in this case. A transcript of this personal hearing is in the Veteran's claims folder.

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the Veteran if further action is required.


REMAND

The Veteran contends that he has cervical and lumbar spine disabilities that are either directly related to his service or have been aggravated by his service-connected residuals of thoracic injury with Scheuermann's disease, compression fractures of T-9 and T-10, with wedging deformities, T7-T9 (hereinafter thoracic spine disability). 

The Veteran's service treatment records reflect neck and back complaints. In July 1980, the Veteran reported that he had neck and back pain for two years. September 1980 c-spine and l-spine series were noted to be "NAD" and the assessment was strain. In October 1980, the assessment was probable strain L1-L2. Records dated in December 1980 indicated that the Veteran had complained of neck and back problems since boot camp and the assessment was lower cervical facet problem and left lower lumbar facet problem. In January 1981, it was noted that he had bilateral spine and lower back pain that began two years earlier in college and reoccurred during physical training. There were no reports of a cervical or lumbar disability on his April 1981 separation examination.

The Veteran testified that prior to his service entrance, he had problems with his neck and back. He had been evaluated but had not been given any diagnoses. He added that after his service separation, he was again treated for his neck and back with cortisone shots. He testified that he was given x-rays but the doctor could not determine what was wrong with his neck and back. 

The evidence of record indicates that after his separation from service the Veteran worked as a furniture mover and cleaned offices, which involved lifting and bending. An April 1989 private treatment record from Dr. R.U. stated that in October 1988, the Veteran was pushing a car which resulted in low back pain that was worse with activity. A CAT scan showed a bulging disk. Dr. R.U. summarized that the Veteran had low back pain which was probably facet coming on after a pushing accident in October 1988. 

An April 1993 record from S.C.A.T. stated that the Veteran was involved in a MVA in October 1990. He was in a whiplash type accident. In January 1993, he underwent an operation at the E.T.M.C. and was discharged with a diagnosis of lumbar disc herniation and disc degeneration L4-5 and L5-S1.

Most recently in April 2007, the Veteran underwent a VA examination wherein his lumbar spine was evaluated. The examiner diagnosed lumbar spine pain status post herniated disc with status post herniated disc, decompression and fusion. The lumbar spine disease with herniated disc began after service with an acute herniation about 1990 or 1991 and was not affected or caused by service. It is more likely that the herniated disc was caused by the heavy furniture moving labor that he was doing. 

When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Although the examiner addressed the claim on a direct basis, he did address the impact, if any, of the Veteran's service-connected thoracic spine disability on the development or progression of the lumbar spine disability. See 38 C.F.R. § 3.310. The Board concludes that a remand is necessary for an addendum to the April 2007 opinion.

Further, the Board concludes that a remand is necessary for a VA examination to address the claim for a cervical spine disability. 38 C.F.R. § 3.159(c)(4)(1).

The Board also notes that on remand, the Veteran should be provided with proper notice with regard to how to substantiate his claims.

Accordingly, the case is REMANDED for the following action:

1. The Veteran should be provided with a notice letter that addresses how to substantiate his claims for service connection for a cervical disability and lumbar disability, to include as secondary to service-connected residuals of thoracic injury with Scheuermann's disease, compression fractures of T-9 and T-10, with wedging deformities, T7-T9, on both a direct and secondary basis. 

2. Obtain any VA records dated from February 2011 to the present.

3. After the above development has been undertaken, schedule the Veteran for a VA examination to evaluate his claims for a cervical disability and lumbar disability, to include as secondary to service-connected residuals of thoracic injury with Scheuermann's disease, compression fractures of T-9 and T-10, with wedging deformities, T7-T9. A copy of the claims folder and this REMAND must be made available to the examiner in conjunction with the examination. The examination report must include responses to the each of the following items:

a. Based on a review of the claims folder and the examination findings, including the service treatment records, private treatment reports, and VA records, the examiner should state a medical opinion as to the likelihood (likely, unlikely, at least as likely as not) that any current cervical spine and lumbar spine disability is causally or etiologically related to his symptomatology in military service (July 1980 to April 1981) as opposed to its being more likely due to some other factor or factors. The examiner should note the in-service findings and reports related to neck and back complaints.

b. The examiner should also opine as to the relationship, if any, between the Veteran's service-connected residuals of thoracic injury with Scheuermann's disease, compression fractures of T-9 and T-10, with wedging deformities, T7-T9 and his cervical and lumbar spine disabilities. To the extent possible, (likely, unlikely, at least as likely as not) the examiner should opine whether a cervical spine and lumbar spine disability was either (a) proximately caused by or (b) proximately aggravated by his service-connected residuals of thoracic injury with Scheuermann's disease, compression fractures of T-9 and T-10, with wedging deformities, T7-T9.

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of a certain conclusion as it is to find against it.)

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Since it is important "that each disability be viewed in relation to its history[,]" 38 C.F.R. § 4.1 (2010), copies of all pertinent records in the appellant's claims file, or in the alternative, the claims file, must be made available to the examiner for review.
4. When the development requested has been completed, the claims for entitlement to service connection for cervical and lumbar spine disabilities, to include as secondary to service-connected residuals of thoracic injury with Scheuermann's disease, compression fractures of T-9 and T-10, with wedging deformities, T7-T9, should be reviewed by the RO on the basis of additional evidence. If the benefits sought are not granted, the Veteran and his representative should be furnished a Supplemental Statement of the Case (SSOC) and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



______________________________________________
KATHLEEN K. GALLAGHER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs