http://www.va.gov/vetapp16/Files4/1630505.txt

Citation Nr: 1630505 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 08-21 934 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, Iowa

THE ISSUES

1. Entitlement to service connection for sleep apnea.

2. Entitlement to service connection for chronic obstructive pulmonary disease (COPD) (also claimed as lung problems and bronchitis).

3. Entitlement to service connection for a heart disability.

4. Entitlement to an effective date earlier than April 17, 2012, for the grant of service connection for lung cancer. 

REPRESENTATION

Appellant represented by: Amy B. Kretkowski

WITNESSES AT HEARING ON APPEAL

Appellant and his wife

ATTORNEY FOR THE BOARD

J. Davitian, Counsel

INTRODUCTION

The Veteran served on active duty from August 1966 to May 1968. 934

This case is before the Board of Veterans' Appeals (BVA or Board) on appeal from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Des Moines, Iowa. A November 2006 rating decision denied service connection for sleep apnea, a September 2011 rating decision denied service connection for COPD (also claimed as lung problems and bronchitis) and a November 2013 rating decision denied service connection for a heart disability. In addition, a February 2013 rating decision granted service connection for lung cancer, effective April 17, 2012. 

The Board remanded the issue of entitlement to service connection for sleep apnea in January 2011 and October 2012. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.

REMAND

Turning to the Veteran's sleep apnea, current VA treatment records confirm that the Veteran has this diagnosis. His July 1966 service entrance examination was negative for this disability. However, the Veteran's July 1966 and April 1968 reports of history reflect that the Veteran had a history of trouble sleeping. 

The report of a February 2011 VA examination for sleep apnea states that it was less likely as not that the Veteran had sleep apnea during active duty. However, this opinion fails to address the Veteran's contentions as to continuity of sleep apnea symptoms ever since separation from active duty. See Dalton v. Nicholson, 21 Vet. App. 23 (2007) (holding that an examination must consider lay evidence of in-service incurrence or continuity of symptomatology since service).

The February 2011 VA examination report also fails to address the fact that the report of a May 2006 VA examination for diabetes mellitus describes the Veteran's sleep apnea and sleep problems as "developed in the service." 

The February 2011 VA examination report is therefore inadequate. Once the Secretary undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, he must provide an adequate one. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). On remand, the VA examiner must address the testimony as to continuity of symptoms since separation from service. 

Turning to the Veteran's COPD, a July 2014 VA medical opinion provides a negative opinion as to the etiology of this disability. However, the RO has not considered this new pertinent evidence. Because this evidence was received by the AOJ prior to the transfer of the records to the Board, 38 C.F.R. § 19.37(a) (2015) requires that the AOJ consider the evidence and prepare an SSOC under 38 C.F.R. § 19.31(a). In other words, the Board finds that it does not have jurisdiction to consider this matter until the AOJ issues an SSOC with respect to the additional evidence. Under these circumstances, the Board has no alternative but to remand this matter for AOJ consideration of the additional evidence received, in the first instance, and issuance of an SSOC reflecting such consideration. See 38 C.F.R. §§ 19.31(a), 19.37(a).

Turning to the Veteran's claim for an earlier effective date for service connection for lung cancer, the April 17, 2012, effective date is based on the date of a biopsy that first showed lung cancer. In support of his claim for an earlier effective date for service connection for lung cancer, the Veteran contends that a lung nodule shown on an August 2006 VA chest x-ray was a manifestation of lung cancer. 

In addition, the Veteran points out that the evidence shows that a right upper lobe nodule increased in size from 7mm in August 2006 to 11 mm in November 2008. See 11/12/08 VAMC thoracic surgery consult. In 2009, the nodule was described as "stable." See 1/8/09 VAMC pulmonary note. In 2010, it was characterized as possibly "a slow growing adenocarcinoma." See 9/8/10 pulmonary note. In July 2011, it was noted that the "RU Left nodules have been increasing in size since exam in September 2010.... Given the amount of nodules and the presence of calcified nodules, granulomatous disease is higher on my differential. That said, the nodules are growing and Mr. [redacted] needs a biopsy." See 7/13/11 pulmonary note. This examiner noted that the Veteran's "lung function has declined markedly since 2009, likely largely due to his medication noncompliance and continued tobacco abuse" and that the "[d]ecline in lung function is greater than expected for natural course of COPD." Id. By October 2011, the PET impression read "worrisome for malignancy." See 10/14/11 pulmonary note.

The July 2014 VA medical opinion states that it was impossible to make the diagnosis of a [lung] malignancy without a tissue biopsy, and [therefore] any earlier suggestion of malignancy [prior to the April 17, 2012, biopsy that showed lung cancer] would be mere speculation. 

However, a review of the July 2014 VA medical opinion reveals that it does not address many relevant VA treatment records, to include but not limited to the September 2010 VA pulmonary note that characterized a right upper lobe nodule as possibly a slow growing adenocarcinoma. This medical opinion is therefore inadequate. Once the Secretary undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, he must provide an adequate one. See Barr, supra. 

Turning to the Veteran's heart disability, he contends in part that his current congestive heart failure is related to his service-connected diabetes mellitus. In this regard, the July 2014 VA medical opinion also states that the Veteran's service-connected diabetes mellitus did not cause heart failure. However, the medical opinion does not address whether the Veteran's service-connected diabetes mellitus aggravates his chronic congestive heart failure. See 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439 (1995). This medical opinion is therefore inadequate. Once the Secretary undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, he must provide an adequate one. See Barr, supra. 

Accordingly, the case is REMANDED for the following action:

1. Obtain any outstanding relevant VA or private treatment records. 

2. After completion of the foregoing, schedule the Veteran for an examination by an appropriate VA examiner to determine the nature, extent and etiology of the Veteran's sleep apnea. Copies of all pertinent records from the Veteran's eFolders must be made available to the examiner.

Following a review of the relevant medical evidence, the medical history and the results of the clinical evaluation and any tests that are deemed necessary, the examiner is asked to opine whether it is at least as likely as not (50 percent or more likelihood) that any current sleep apnea is causally related to the Veteran's active duty.

In doing so, the examiner must consider the statement by the Veteran regarding post-service continuity of sleep apnea symptoms, and the May 2006 VA examination report which address the Veteran's sleep apnea and sleep problems as "developed in the service." 

The examiner is requested to provide a rationale for any opinion expressed.

3. Forward copies of all relevant documents from the Veteran's eFolders to an appropriate examiner for an opinion as to whether it is at least as likely as not (50 percent or more likelihood) that the Veteran's service-connected lung cancer was manifest prior to the April 7, 2012, biopsy that showed lung cancer. 

In doing so, the examiner should address the fact that the evidence shows that a right upper lobe nodule increased in size from 7mm in August 2006 to 11 mm in November 2008. See 11/12/08 VAMC thoracic surgery consult. In 2009, the nodule was described as "stable." See 1/8/09 VAMC pulmonary note. In 2010, it was characterized as possibly "a slow growing adenocarcinoma." See 9/8/10 pulmonary note. In July 2011, it was noted that the "RU Left nodules have been increasing in size since exam in September 2010.... Given the amount of nodules and the presence of calcified nodules, granulomatous disease is higher on my differential. That said, the nodules are growing and Mr. [redacted] needs a biopsy." See 7/13/11 pulmonary note. This examiner noted that the Veteran's "lung function has declined markedly since 2009, likely largely due to his medication noncompliance and continued tobacco abuse" and that the "[d]ecline in lung function is greater than expected for natural course of COPD." Id. By October 2011, the PET impression read "worrisome for malignancy." See 10/14/11 pulmonary note.

The examiner is requested to provide a rationale for any opinion expressed. If the examiner cannot provide the requested opinion without resorting to speculation, he or she should expressly indicate this and provide a supporting rationale as to why an opinion cannot be made without resorting to speculation.

4. Schedule the Veteran for an examination by an appropriate VA examiner to determine the nature, extent and etiology of any heart disability that may be present, to include congestive heart failure. Copies of all pertinent records from the Veteran's eFolders must be made available to the examiner. 

Following a review of the relevant medical evidence, the medical history, and the results of the clinical evaluation and any tests that are deemed necessary, the examiner should answer the following: 

(a) Is it at least as likely as not (50 percent or more likelihood) that any currently diagnosed heart disability, to include congestive heart failure, was caused by service-connected disability?

(b) Is it at least as likely as not (50 percent or more likelihood) that any currently diagnosed heart disability, to include congestive heart failure, was aggravated by service-connected disability? 

The examiner is informed that aggravation is defined for legal purposes as a chronic worsening of the underlying condition versus a temporary flare-up of symptoms, beyond its natural progression. If aggravation is present, the clinician should indicate, to the extent possible, the approximate level of heart disability present (i.e., a baseline) before the onset of the aggravation. 

The examiner is requested to provide a rationale for any opinion expressed. If the examiner cannot provide the requested opinion without resorting to speculation, he or she should expressly indicate this and provide a supporting rationale as to why an opinion cannot be made without resorting to speculation.

5. Then, readjudicate the Veteran's claims, considering all evidence received that has not been addressed in an SOC or SSOC, to include the November 2013 VA medical opinion concerning the etiology of the Veteran's COPD. If any benefit sought on appeal remains denied, the Veteran and his representative should be provided a supplemental statement of the case and afforded an opportunity to respond. The case should be returned to the Board for appellate review.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2015).

_________________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2015), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).