Citation Nr: 1722235 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 13-02 949 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Medical and Regional Office Center in Fargo, North Dakota


THE ISSUES

1. Entitlement to service connection for bridging of the left anterior descending artery with diastolic or systolic collapse.

2. Entitlement to service connection for tinnitus.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

N. Rippel, Counsel


INTRODUCTION

The Veteran served on active duty from December 1990 to June 1991, July 2005 to October 2006, and October 2009 to December 2010, and active duty for training from August 2002 to December 2002 and August 2011 to November 2011, including service in southwest Asia and Bosnia. He has additional unverified service in the Army National Guard. 

The Veteran's claim comes before the Board of Veterans' Appeals (Board) on appeal from a September 2011 rating decision of the Department of Veterans Affairs' (VA) Regional Office (RO) in Fargo, North Dakota.

In June 2013, the Veteran testified during a hearing before the undersigned Veterans Law Judge at the RO. 

In March 2015, the Board remanded these matters to the Agency of Original Jurisdiction (AOJ) for additional development. The Board finds the directives have been substantially complied with as to the tinnitus claim, and that matter again is before the Board. Stegall v. West, 11 Vet. App. 268, 271 (1998).

The issue of service connection for bridging of the left anterior descending artery with diastolic or systolic collapse is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

Tinnitus is attributable to service.


CONCLUSION OF LAW

Tinnitus was incurred during wartime service. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

The Veterans Clams Assistance Act of 2000 as amended (VCAA) imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). In this decision, the Board is granting the claim for tinnitus. Further discussion of the VCAA is therefore unnecessary. Wensch v. Principi, 15 Vet. App. 362, 367-368 (2001).

II. Service Connection Claims

A. Law

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1110; 38 C.F.R. § 3.303 (a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and, (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303 (a). 

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

In addition, for veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including organic diseases of the nervous system (such as tinnitus), are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1137; 38 C.F.R. §§ 3.307 (a), 3.309(a). 

With chronic disease shown as such in service so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent cause. 38 C.F.R. § 3.303 (b). Continuity of symptomatology after discharge is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303 (b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show. The Veteran should not assume that the Board has overlooked pieces of evidence that are not specifically discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000). The law requires only that the Board provide reasons for rejecting evidence favorable to the Veteran.

B. Facts and Analysis

The Board concedes that as a helicopter repairman and military policeman who served in southwest Asia and Bosnia, to include in areas where he received imminent danger pay as well as the Global War on Terrorism Expeditionary Medal, the Veteran was exposed to noise trauma in wartime service. There is also a current diagnosis of tinnitus, as demonstrated in the June 2011 VA examination report, and first claimed in the March 2011 claim form. Thus, the only issue is whether there is a nexus between the Veteran's tinnitus and his period of active service. 

Service treatment records are silent for complaints or diagnosis of tinnitus. Moreover, the Veteran checked off no to a series of problems, including ringing in the ears, in a September 2010 post deployment questionnaire. An October 2006 post deployment questionnaire also has a space for response as to ringing in the ears, but is ultimately deemed illegible by the Board. 

As to the current tinnitus, the VA examiner in June 2011 observed that the Veteran had experienced acoustic trauma in service. The Veteran told the examiner that he first noticed tinnitus in 2005, after noise exposure from helicopter engines, generators, IED alarms and indirect fire. Non-military noise exposure was also reported from aviation occupation for the National Guard for 11 years similar work as when on active duty/active duty for training. Based on a review of the evidence in the claims file and findings from the examination, the VA audiologist opined it is mere speculation as to whether tinnitus is the result of noise exposure during military service. The examiner referred to inconsistencies of reported onset in 2005 and denial of tinnitus in 2010 as well as normal hearing bilaterally on examination with no significant threshold shift in either ear. 

At the hearing before the undersigned in June 2013, the Veteran asserted that he first noticed tinnitus while being deployed to Bosnia in 2005 and it has continued to the present. He indicated that he thought he tried to file a claim for service connection for tinnitus when he had his exit interview in 2005. 

A significant problem in the Veteran's claim is his denial of ringing in the ears in the 2010 post deployment questionnaire. The Board does not consider this fatal to the claim as to continuity, which he voiced to the examiner in June 2011, 6 months after service separation in December 2010, and in more detail at the 2013 hearing before the undersigned. The Veteran has since explained that he in fact did experience such ringing since his service in Bosnia in 2005, though he offered no substantive reason for why he denied ringing in the ears in 2010. His assertion that he thought he filed a claim during his exit interview after his Bosnia service is noted, but is not wholly dispositive in light of his failure to actually acknowledge ringing in the ears on the 2010 post-deployment questionnaire. There is only an October 2006 record of the Veteran requesting that his compensation be restarted. Nonetheless, the Board judges the Veteran credible in his assertion of continuity made at the hearing. The Veteran's competent and credible testimony supports a nexus between his current tinnitus and his wartime in-service noise exposure. Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2008) (lay evidence may suffice to prove service connection on its own merits).

The Board observes that the 2011 VA examiner stated that it would be speculative to relate tinnitus to the Veteran's service noise exposure because of inconsistencies in reported onset, denial of tinnitus in 2010 and normal hearing. Nonetheless, the Veteran's competent and credible testimony, assessed by the undersigned at the 2013 hearing, provides a nexus linking current tinnitus to in-service noise exposure. See Buchanan, supra. The 2011 VA examiner's nexus opinion did not have the benefit of review of the Veteran's more detailed and credible lay statements attesting to the onset of tinnitus set forth at the 2013 hearing. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (a medical opinion based on an inaccurate factual premise is not probative); 38 C.F.R. § 3.303 (d) (service connection warranted in some circumstances where disease is first diagnosed after service). 

Hence, on this record, the evidence is found to be evenly balanced in showing that the Veteran's tinnitus had clinical onset following his exposure to harmful noise levels in connection with his service as a helicopter crew chief in Bosnia. In resolving all reasonable doubt in the Veteran's favor, service connection is warranted. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.


ORDER

Service connection for tinnitus is granted.



REMAND

This claim was remanded in March 2015 in order to obtain a cardiologist's opinion as to several aspects of any current heart condition. In the October 2016 opinion, the VA cardiologist noted a history of very atypical chest discomfort intermittently at least since 2010-2011 when the Veteran was treated for chest pain in Iraq and Kuwait. However, the cardiologist also noted that except for an echocardiogram in 2016, no testing was available for him to review; stress tests reported by the Veteran as part of his flight physicals were not available to him. The cardiologist opined that the Veteran's heart condition was a congenital disease that pre-existed service, but that there was no strong evidence of natural progress of the disease. Nonetheless, the cardiologist pointed out that the identified stress tests were not presented for him to review. His final opinion as to whether there was evidence of natural progression was, "Unfortunately, I do not believe I can give any further evidence of a natural progress of the disease in this case." 

Part of the cardiologist's opinion is clear; the Veteran's congenital disease, bridging of the left anterior descending artery with systolic rather than diastolic collapse, pre-existed service. However, in view of the potentially relevant identified records, the stress tests, the issue of whether this condition permanently increased in severity during his active military service remains unsettled. Here, it is unclear whether there are additional flight physical examination reports that have not been obtained, or if flight physicals in the record were not made readily available to the examiner for review. 

Regardless, the cardiologist rendering the opinion in this matter should be provided with all of the relevant records in order to make an accurate and informed decision. As such, the Board will remand this matter in order to obtain these identified stress tests reported by the Veteran, so that these may be reviewed by the cardiologist offering the opinion. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). Alternatively, if the stress tests of which the Veteran speaks are already of record, and were not pointed out for the physician's review, these should be highlighted and forwarded to the cardiologist along with the rest of the file, for an addendum. 

Accordingly, the case is REMANDED for the following action:

1. Obtain any additional records which contain the flight physicals with stress tests, identified by the Veteran in the October 2016 examination. 

2. After obtaining the above records, and/or highlighting the flight physical stress tests reports in the record, return the file to the cardiologist who authored the October 2016 opinion, or a suitable substitute, to address the following:

Did the pre-existing congenital disease left anterior descending artery with systolic or diastolic collapse permanently increase in severity during the Veteran's active military service? 

If there was a permanent increase in severity of the pre-existing congenital disease left anterior descending artery with systolic or diastolic collapse during service, is it "undebatable" this permanent increase in severity was due to the natural progression of the disability?

A thorough explanation must be provided for the opinions rendered. If the examiner cannot provide the requested opinions without resorting to speculation, he or she should expressly indicate this and provide a supporting explanation as to why an opinion cannot be made without resorting to speculation.

3. After the completion of any action deemed appropriate, the appellant's claim should be readjudicated. If any benefit sought remains denied, the appellant should be provided a supplemental statement of the case and given the opportunity to respond.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs