http://www.va.gov/vetapp16/Files4/1630408.txt

Citation Nr: 1630408 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 10-41 332 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida

THE ISSUES

1. Entitlement to a compensable disability rating for pseudofolliculitis barbae (skin condition).

2. Entitlement to a compensable disability rating for residuals of ingrown toenails of the left great toe.

3. Entitlement to a compensable disability rating for hypertension.

4. Entitlement to a disability rating in excess of 10 percent for chondromalacia, status post anterior cruciate ligament reconstruction, with residual scars, left knee (left knee disability).

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

K. Neilson, Counsel

INTRODUCTION

The Veteran served on active duty from November 1989 to November 1998. 

This appeal comes before the Board of Veterans' Appeals (Board) on appeal from an October 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

In May 2011, the Veteran testified at a Board hearing in Washington, D.C., before the undersigned Veterans Law Judge. A transcript of that hearing is associated with the claims file. 

The instant matters were previously before the Board in April 2013, at which time they were remanded for the Veteran to be scheduled for VA examinations to determine that current severity of his service-connected pseudofolliculitis barbae, residuals of ingrown toenails of the left great toe, hypertension, and left knee disability. After completion of the requested development, the Veteran's increased rating claims were readjudicated and denied via a May 2013 supplemental statement of the case (SSOC), which document is contained in the Veteran's Virtual VA file. The appeal was thereafter returned to the Board.

Also in its April 2013 decision, the Board "reopened" previously denied claims of service connection for sinusitis and for a low back disability and remanded the underlying service connection claims for further development. The Board also referred the issue of entitlement to a compensable disability rating for residuals of ingrown toenails, right great toe, which issue was raised during the Veteran's May 2011 hearing.

A review of the Veteran's VBMS file shows that in June 2013, the Appeals Management Center (AMC) issued a rating decision wherein it awarded service connection for allergic rhinitis (claimed as sinusitis), back strain with degenerative disc and joint disease, and left lower extremity radiculopathy. The AMC also awarded an increased rating of 10 percent for the Veteran's service-connected residuals of ingrown toenails, right great toe, effective from May 8, 2013. The Veteran was notified of the decision and of his appellate rights. The Veteran did not disagree with any aspect of that decision. Those matters have accordingly been resolved. See Grantham v. Brown, 114 F. 3d 1156, 1158 (Fed. Cir. 1997). (The Board notes that the May 2013 SSOC addresses the disability rating assigned for the Veteran's residuals of ingrown toenails, right great toe; however, that issue was not part of the Veteran's initial appeal and the Veteran did not disagree with any aspect of the AMC's assignment of a 10 percent rating. Accordingly, its inclusion in the SSOC would appear erroneous, see 38 C.F.R. § 19.31a (2015), and the matter is not before the Board.)

Lastly, the Board notes that more recent VA treatment records have been associated with the Veteran's claims folder since the issuance of the May 2013 SSOC. Although the Board is remanding the Veteran's claim for an increased rating for his left-knee disability due to information contained in these more recent records, these records do not contain information relevant to the issues being decided herein. Accordingly, to remand the Veteran's claims for higher ratings for his service-connected residuals of ingrown toenail, left great toe and hypertension for the AOJ to issue an SSOC reflecting consideration of the additional VA treatment records would be superfluous, as it would not result in a benefit flowing to the Veteran.

FINDINGS OF FACT

1. The Veteran has a history of diastolic blood pressure predominantly 100 or more and his hypertension requires continuous medication for control.

2. Throughout the appeal period, the Veteran's diastolic blood pressure has ranged from 62 to 86 and his systolic blood pressure has ranged from 106 to 123; the Veteran's hypertension is generally controlled with medication. 

3. Throughout the appeal period, the Veteran's has experienced residual pain and required surgical intervention related to his ingrown toenails, left great toe, more nearly approximating a moderate foot injury.

CONCLUSIONS OF LAW

1. The criteria for a 10 percent disability rating, but no higher, for service-connected hypertension have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.7, 4.130, Diagnostic Code 7101 (2015).

2. The criteria for a 10 percent disability rating, but no higher, for service-connected residuals of ingrown toenails of the left great toe have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.7, 4.71a, Diagnostic Code 5284 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Notice and Assistance

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2014), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2015), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim. They also require VA to notify the claimant and the claimant's representative of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. 

The Veteran has not disputed the contents of the VCAA notice in this case. Further, the Board finds that the Veteran was adequately informed of the information and evidence necessary to substantiate the increased rating matters decided herein via a letter dated in September 2008, which letter the Board finds complies with the requirements of 38 U.S.C.A. § 5103(a) and Vazquez-Flores, supra. Thus, the Board finds that the duty-to-notify requirements under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) were satisfied.

Regarding the duty to assist, the Board finds that VA has adequately fulfilled its obligation to assist the Veteran in obtaining the evidence necessary to substantiate the matter decided herein. The relevant evidence obtained and associated with the Veteran's paper claims folder and his VBMS and Virtual VA files includes the Veteran's VA examination reports, VA treatment records, private treatment records, and lay statements. The Veteran has not identified any outstanding records relevant 

to the severity of his disability of the left great toe and for hypertension during the claims period and the Board is aware of none. 

The Veteran was also provided with several VA examinations in connection with his claims for increased disability ratings for his disability of the left great toe and for hypertension. A review of the VA examinations report dated during the relevant time period shows that the VA examiners examined the Veteran and that the examination reports reflect that the examiners considered the Veteran's subjective complaints and past medical history. The Board finds that the examination reports, along with the other lay and medical evidence of record, contain sufficient evidence by which to evaluate the Veteran's service-connected disability of the left great toe and hypertension in the context of the pertinent regulations during the pendency of his claim. Accordingly, the Board has properly assisted the Veteran by affording him adequate VA examinations in connection with the rating matters decided herein. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).

II. Analysis

Disability ratings are determined by the application of a schedule of ratings, which is based on the average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015). "Where entitlement to compensation has already been established and an increase in the assigned evaluation is at issue, it is the present level of disability that is of primary concern." Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Although the recorded history of a particular disability should be reviewed in order to make an accurate assessment under the applicable criteria, the regulations do not give past medical reports precedence over current findings. Id. For increased rating claims, staged ratings are appropriate when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). Further, "[w]here there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned." 38 C.F.R. § 4.7 (2015).

A. Left Great Toe 

The Veteran's service-connected disability of the left great toe, characterized as residuals of ingrown toenails, left great toe, has been evaluated as noncompensably disabling under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5299-5284. The Board notes that hyphenated DCs are used when a rating under one DC requires use of an additional DC to identify the basis for the evaluation assigned. 38 C.F.R. § 4.27 (2015). When an unlisted disease, injury, or residual condition is encountered, requiring rating by analogy, the DC number will be "built-up" as follows: the first two digits will be selected from that part of the schedule most closely identifying the part, or system of the body involved, in this case, miscellaneous diseases, and the last two digits will be "99" for all unlisted conditions. Then, the disability is rated by analogy under a DC to a closely related disability that affects the same anatomical functions and has closely analogous symptomatology. 38 C.F.R. §§ 4.20, 4.27 (2015). In this case, the RO has determined that the DC most analogous to the Veteran's disability of the left great toe is DC 5284, which pertains to other foot injuries. 

Under DC 5284, a 10 percent rating is assigned for moderate foot injuries. 38 C.F.R. § 4.71a, DC 5284 (2015). Higher evaluation of 20 and 30 percent are assigned for moderately severe and severe foot injuries and a 40 percent rating is assigned when there is actual loss of use of the foot. Id. 

The Veteran's claim for an increased evaluation for his service-connected residuals of an ingrown toenail, left great toe, was received in July 2008. The Veteran was afforded a VA examination in October 2008, during which he reported pain in the area of left great toe, with flare-ups occurring one to three times a month, precipitated by prolonged walking and/or running. Objective evidence of painful motion was not, however, noted, nor was erythema, swelling, or tenderness to palpation. VA treatment records contained in the Veteran's VBMS file show that in September 2009, the Veteran called his VA outpatient clinic with complaints related to an ingrown toenail on the lateral side of his left great toe. Specifically, the Veteran reported having increased pain in his left great toe for three weeks and noted that he had had problems related to an ingrown toenail for 10 years. He was seen for a podiatry consultation in November 2009, at which time he was noted to have a painful ingrown and thickened left great toenail. He reported that he had undergone two previous surgical removals of the border, but that the toenail had regrown. The assessment was onychocryptosis/onychomycosis left hallux, and a nail plate avulsion with chemical matrixectomy was performed later that month.

During his May 2011 hearing, the Veteran reported pain and sensitivity in his left great toe. He described the pain as mild, and specifically denied excruciating pain.

The Veteran was again examined in May 2013. The examiner noted that the Veteran had previously had an ingrown toenail on the first left toe, for which he had undergone surgery in 2009. The Veteran reported that he continued to trim the nail when it grew. Examination of the first left toe showed a small growth of nail embedding into the medial side of the nail bed and skin. No infection was noted. Regarding the severity of the Veteran's disability, the examiner indicated it to be of moderate severity, stating that the Veteran "continues to trim the toenail and avoid the ingrown toenail causing discomfort and pain in the area."

Upon review of the evidence of record, the Board finds that the Veteran's residuals of ingrown toenails of the left great toe more nearly approximate the criteria for a 10 percent disability rating under DC 5284. The Board points out that the Veteran has consistently reported pain in the area of his left great toe and it is clear that ingrown toenail has recurred and required surgical intervention during the claims period. The most recent VA examiner also indicated the level of severity of the Veteran's disability to be moderate and the Board finds no reason to differently evaluate the Veteran's disability at any point during the pendency of his claim, especially in light of his complaints of pain and report in 2009 that he had had problems related to an ingrown toenail of the left great toe for 10 years. Thus, resolving all doubt in favor of the Veteran, the Board finds that the Veteran has exhibited a disability picture analogous to a moderate foot injury under DC 5284, and the criteria for a 10 percent rating have been met. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2015); see 38 C.F.R. § 4.71a, DC 5284. The evidence does not, however, support a rating in excess of 10 percent.

In so finding, the Board concludes that a disability such as that described in the record does not amount to disability that warrants a characterization of "moderately severe" as that term is used in DC 5284. Although that term is not specifically defined by the regulation, review of the dictionary definition as well as other rating criteria relating to disabilities closely associated with the same anatomical area suggests that this term contemplates disability greater than that experienced by the Veteran. Notably, a 20 percent rating (the rating assignable under DC 5284 for "moderately severe" foot injury) may also be assigned in cases where all toes of a foot tend to dorsiflexion, with limitation of dorsiflexion, shortened plantar fascia, and marked tenderness under the metatarsal heads, see 38 C.F.R. § 4.71a, DC 5278; or where there is severe flatfoot, with objective evidence of marked deformity, pain, swelling, and callosities; or where the one or two toes have been amputated with removal of the metatarsal head, see 38 C.F.R. § 4.71a, DC 5171. 

In this case, the Board finds that the residuals of the Veteran's ingrown toenails, left great toe, consist primarily of pain and sensitivity, which the Veteran himself described as mild during his May 2011 hearing. The VA examiner also found the Veteran's left great toe symptoms were no more than moderate in severity. The disability, which has been shown to cause pain, is not the sort of "moderately severe" disability contemplated by the rating criteria for a rating higher than 10 percent under DC 5284. The 10 percent rating that has been assigned contemplates the Veteran's primary complaints of pain in the left great toe that is aggravated by prolonged walking or running. Without sufficient evidence of this type of symptomatology, or more than moderate impairment in general, a rating higher than 10 percent is not warranted. Evaluation of the evidence of record further shows that no other DCs are applicable. In that connection, the Board notes that the Veteran has not been shown to have pes planus, weak foot, claw foot, hallux rigidus, or malunion or nonunion of the tarsal or metatarsal bones, rendering higher evaluations under DC 5276, 5277, 5278, 5281, or 5283 inapplicable. 

The Board has also considered whether referral for extraschedular consideration is warranted, but finds that it is not. The Veteran's main residual symptom of his ingrown toenail has been pain. While the DC under which the Veteran is rated does not specifically list pain, the Board has considered the Veteran's complaints of pain in his left great toe and has awarded an increased evaluation based, in part, due to the presence of that residual symptom. Thus, the Veteran's symptoms have been accounted for by his assigned evaluation and his disability picture has not been shown to be so exceptional or unusual such that the schedular criteria do not adequately compensate for associated symptoms. Without sufficient evidence reflecting that the Veteran's disability picture is so "exceptional or unusual," such that the "the available schedular evaluations for [his service-connected residuals of ingrown toenails, left great toe] are inadequate," referral for a determination of whether the Veteran's disability picture requires the assignment of an extra-schedular rating is not warranted. Thun v. Peake, 22 Vet. App. 111, 115-16 (2008); 38 C.F.R. § 3.321(b)(1) (2015). Further, the Veteran has not argued, nor does the evidence so suggest, that the aggregate effects of all service-connected disabilities, requires referral to the Director, Compensation Service, for consideration of the assignment of an extra-schedular rating based on the combined effect of the Veteran's service-connected disabilities, individually or in combination. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014); Yancy v McDonald, 27 Vet. App, 484, 495 (2016).

Moreover, there is no indication in the record that the Veteran is unemployable on account of his residual symptoms attributable to his ingrown toenails, left great toe. As such, the Board finds that the issue of entitlement to a total disability evaluation based on individual unemployability (TDIU) has not been raised by the evidence of record as part of the Veteran's claim for an increased rating for residuals of ingrown toenails of the left great toe. See Rice v. Shinseki, 22 Vet. App. 447, 453-55 (2009) (holding that the issue of entitlement to TDIU is part of an increased rating claim when that issue is raised by the record).

B. Hypertension

The Veteran's hypertension has been evaluated as noncompensably (zero percent) disabling under 38 C.F.R. § 4.104, Diagnostic Code (DC) 7101. Currently, DC 7101 provides that a 10 percent evaluation is warranted where diastolic blood pressure is predominantly 100 or more, or systolic blood pressure is predominantly 160 or more, or when an individual with a history of diastolic blood pressure predominantly 100 or more requires continuous medication for control; a 20 percent evaluation is warranted where diastolic blood pressure is predominantly 110 or more, or systolic blood pressure is predominantly 200 or more; a 40 percent evaluation is warranted where diastolic pressure is predominantly 120 or more, and; a 60 percent evaluation is warranted where diastolic blood pressure is predominantly 130 or more. 38 C.F.R. § 4.104, Diagnostic Code (DC) 7101 (2015). "Note (1)" provides that hypertension or isolated systolic hypertension must be confirmed by readings taken two or more times on at least three different days. Id. at Note 1. 

The Veteran was initially granted service connection for hypertension in March 1999, at which time his hypertension was evaluated as noncompensably disabling. In that decision, the RO noted that the Veteran was diagnosed as having hypertension in 1991. The Board notes, however, that blood pressure readings taken after 1991 do not meet VA's definition of hypertension, which is having a diastolic blood pressure that is predominantly 90mm or greater, or a having a systolic blood pressure that is predominantly 160mm or greater. 38 C.F.R. § 4.104, DC 7101. Indeed, the report of a periodic medical examination dated in 1994 records the Veteran's blood pressure to be 135/82 and there is no diagnosis of hypertension recorded on the examination report. Further, the 2008 VA examination report indicates that hypertension had its onset in 1998. On August 12, 1998, the Veteran's blood pressure was recorded to be 140/90. His blood pressure reading at the time of an August 25, 1998, Medical Board examination was 155/108 and a diagnosis of high blood pressure was recorded. Then, in October 1998, the Veteran underwent a five-day blood pressure reading. On four of the five days, the Veteran had recorded systolic pressures of 100mm or greater.

In July 1998, the Veteran sought an increased evaluation for his service-connected hypertension. The report of an October 2008 VA examination confirmed that the Veteran was then taking continuous medication for control of his hypertension. The Veteran's more recent VA treatment records and the report of the May 2013 VA examination similarly confirm the continuous use of the Veteran's prescribed medication for control of his blood pressure. 

In the instant case, the Board finds that when reasonable doubt is resolved in favor of the Veteran, a rating of 10 percent, but no higher, is warranted for the Veteran's service-connected hypertension. As noted above, a 10 percent rating is warranted when an individual with a history of diastolic blood pressure predominantly 100mm or more requires continuous medication for control. 38 C.F.R. § 4.104, DC 7101. The Board notes that the regulation does not define any length of time during which a veteran must exhibit diastolic readings of 100 or more to be considered as having "a history of diastolic blood pressure predominantly 100 or more." Id. Here, the Board is satisfied that the blood pressure readings in August and October 1998 are sufficient to constitute a history of diastolic blood pressure being predominantly 100mm or more. Further, there is no question that the Veteran is currently on continuous medication for control of his hypertension. Thus, resolving all reasonable doubt in the Veteran's favors, the Board concludes that a rating of 10 percent for service-connected hypertension is warranted. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; see 38 C.F.R. § 4.104, DC 7101.

Although the Board concludes that an increased rating of 10 percent is warranted in this case, the Board can finds no reasonable basis upon which to award a rating in excess of 10 percent at any point during the relevant time period. As noted above, the Veteran's current appeal stems from his July 2008 claim for an increased evaluation for his service-connected hypertension. VA treatment records dated in June, October, and December 2007 and in January and July 2008 record the Veteran's blood pressure as 123/77, 112/75, 111/72, 117/82, and 106/82. When examined in October 2008, the Veteran's blood pressure was 118/78 and at the time of the May 2013 VA examination, it was 110/86. VA treatment records dated during the interim period record diastolic pressures as ranging from 62 to 84 and systolic pressures ranging from 111 to 130. Accordingly, because the evidence fails to demonstrate the criteria required for a higher rating (i.e., diastolic blood pressure predominantly 110 or more, or systolic blood pressure predominantly 200 or more), entitlement to an evaluation greater than 10 percent for hypertension must be denied. See 38 C.F.R. §§, 4.7, 4.104, DC 7101.

The above determination is also based upon consideration of applicable rating provisions. The Board also finds that the Veteran's disability level and symptomatology is adequately described by the rating criteria. Indeed, the Veteran's symptomatology, elevated diastolic and systolic blood pressure readings and the use of continuous medication for control, are specifically contemplated by the rating criteria set forth in DC 7101. Without sufficient evidence reflecting that the Veteran's disability picture is so "exceptional or unusual," such that the "the available scheduler evaluation for [his service-connected hypertension] are inadequate," referral for a determination of whether the Veteran's disability picture requires the assignment of an extra-schedular rating is not warranted. Thun, supra; 38 C.F.R. § 3.321(b)(1). Further, the Veteran has not argued, nor does the evidence so suggest, that the aggregate effects of all service-connected disabilities, requires referral to the Director, Compensation Service, for consideration of the assignment of an extra-schedular rating based on the combined effect of the Veteran's service-connected disabilities, individually or in combination. See Johnson and Yancy, both supra.

Moreover, there is no indication in the record that the Veteran is unemployable on account of his hypertension. As such, the Board finds that the issue of entitlement to a TDIU has not been raised by the evidence of record as part of the Veteran's claim for an increased rating for hypertension. See Rice, supra.

ORDER

Entitlement to a 10 percent evaluation, but no more, for residuals of ingrown toenails, left great toe is allowed, subject to the regulations governing the payment of monetary benefits.

Entitlement to a 10 percent evaluation, but no more, for hypertension is allowed, subject to the regulations governing the payment of monetary benefits.

REMAND

As noted in the introduction, an SSOC addressing the Veteran's claim for an increased rating for his service-connected left knee disability was issued in May 2013. The SSOC reflects considerations of VA treatment records dated through April 2013. A review of the Veteran's VBMS file shows that VA treatment records dated through November 2015 have now been associated with the record. A review of these records shows that after the Veteran was last examined in May 2013, the Veteran was evaluated and fitted with hinged knee braces. X-rays of the left knee were also taken in November 2013, the reports of which were interpreted to reveal mild medial, lateral, and patellofemoral compartment narrowing and minimal suprapatellar effusion. The impression was postsurgical, mild degenerative change, similar to the prior exam. Notably, the May 2013 examination did not include imaging studies, although the examiner referenced x-rays taken in 2008, noting that they "did not show any degenerative changes." 

Given the existence of relevant evidence that has not been considered in the first instance by the AOJ and because the November 2013 x-ray reports suggests that the Veteran may now have arthritis, the Board finds it necessary to remand the Veteran's claim for an increased rating for his service-connected left knee disability. See Disabled American Veterans v. Sec'y of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003) (appellants are denied "one review on appeal to the Secretary" when the Board considers additional evidence without having to remand the case to the agency of original jurisdiction for initial consideration, and without having to obtain the appellant's waiver). But see Honoring America's Veterans and Caring for Camp Lejeune Families Act of 2012, § 501, Pub L. 112-154, 126 Stat. 1165 (August 6, 2012) (amending 38 U.S.C.A. § 7105 by adding new paragraph (e) and providing that if new evidence is submitted with or after a Substantive Appeal received on or after February 2, 2013, then it is subject to initial review by the Board unless the Veteran explicitly requests AOJ consideration). Furthermore, because the November 2013 x-ray reports suggests a change in the Veteran's disability picture (i.e., the presence of arthritis), further development is necessary, as the evidence of record does not address adequately whether the Veteran may entitlement to separate ratings for his service-connected left knee disability. See VAOPGCPREC 23-97 (holding that a veteran who has arthritis and instability of the knee may be rated separately under 38 C.F.R. § 4.71a, Diagnostic Codes 5003 and 5257, provided that a separate rating is based upon additional disability).

Regarding the Veteran's service-connected skin condiction, characterized as pseudofolliculitis barbae, the Board notes that disability has been assigned a noncompensable rating under 38 C.F.R. § 4.118, DC 7899-7806. Notably, DC 7806, which pertains to dermatitis or eczema, provides that disabilities evaluated under that DC may also be rated as disfigurement of the head, face or neck, under DC 7800 or as scars under DCs 7801-7805, depending upon the predominant disability. The Veteran was most recently examined in May 2013. At that time, the Veteran's skin condition was described as causing painful bumps during flare-ups and the Veteran reported shaving only every three days to avoid flare-ups. The examiner noted that the Veteran's skin condition causes scarring or disfigurement of the head, face, or neck. Specifically, the examiner found that the Veteran had hyperpigmentation surrounding that area of the bumps, mainly on the neck area. The Board points out that under DC 7800, a 10 percent evaluation is warranted when there is one characteristic of disfigurement. 38 C.F.R. § 4.118, DC 7800 (2015). One of the characteristics of disfigurement set forth in DC 7800 is hyperpigmentation of the skin in an area exceeding six square inches. Although the examiner documented hyperpigmented skin, the examiner did not provide findings regarding the total surface area of hyperpigmented skin and the Veteran's VA treatment records do not otherwise contain such findings. Because there is no finding of whether the Veteran's hyperpigmented skin exceeds six square inches, the evidence developed in this case is insufficient for the Board to rely upon to adequately evaluate the Veteran's skin disability and a remand is warranted for additional development.

Accordingly, the case is REMANDED to the AOJ for the following action:

1. Ensure that all pertinent VA treatment records dated since November 2015 have been obtained and associated with the claims folder. 

2. Schedule the Veteran for an examination in connection with his claim for a compensable rating for his service-connected pseudofolliculitis barbae. All necessary tests and studies should be conducted and the reports of any such tests or studies should be included in the claims folder.

The examiner should review the claims file prior to examining the Veteran, and should opine as to the current level of severity of the Veteran's pseudofolliculitis barbae. The examiner should note the affected areas and any present disfigurement, and should detail any residual scarring associated with the condition. The examiner should comment on whether the Veteran has hyperpigmentation exceeding six square inches.

3. Schedule the Veteran for an examination in connection with his claim for an increased rating for his service-connected chondromalacia, status post anterior cruciate ligament reconstruction, with residual scars, left knee. The claims folder, and a copy of this remand, must be provided to and reviewed by the examiner as part of the examination. All necessary tests and studies, to include imagining studies, should be conducted and the reports of any such tests or studies should be included in the claims folder.

The examiner should be asked to provide a complete assessment of the severity of the Veteran's service-connected left knee disability. The examiner should comment on any arthritis documented by x-ray findings and its relationship to service-connected disability. The examiner should also describe any lateral instability or recurrent subluxation as nonexistent, "slight," "moderate," or "severe." All appropriate tests and studies should be performed and all clinical findings should be reported in detail.

The examiner should report the ranges of motion for the left knee and state whether the Veteran's service-connected left knee disability is manifested by weakened movement, excess fatigability, incoordination, or pain. These determinations should be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, incoordination, or pain. All opinions should be set forth in detail and explained in the context of the record.

4. After completing the requested actions and any additional notification and/or development deemed warranted, the AOJ should readjudicate the issues on appeal. In readjudicating the Veteran's increased rating claims, the AOJ should also consider the potential applicability of staged ratings should be considered. See Hart v. Mansfield, 21 Vet. App. 505 (2008). The AOJ must also consider whether the Veteran's skin disability is more appropriately rated under DC 7800 and whether the Veteran is entitled to a separate rating for left knee arthritis or any other manifestation of his service-connected left knee disability.

If any benefit sought is not granted, the Veteran should be furnished with a supplemental statement of the case and afforded an opportunity to respond before the record is returned to the Board for further review.

No action is required of the Veteran until notified by the RO; however, the veteran is advised that failure to report for any scheduled examination may result in denial of the claim. 38 C.F.R. § 3.655 (2015). The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

____________________________________________
THOMAS J. DANNAHER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs