Citation Nr: 1406904 
Decision Date: 02/18/14 Archive Date: 03/04/14

DOCKET NO. 09-29 470 ) DATE
 )
 )

Received from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to an initial disability rating greater than 10 percent for service-connected right ankle sprain.

2. Entitlement to an initial disability rating greater than 10 percent for service-connected residuals of a left knee laceration.


REPRESENTATION

Appellant represented by: Michael W. Zimecki, Attorney at Law


WITNESS AT HEARING ON APPEAL

Appellant



WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

D. Orfanoudis, Counsel


INTRODUCTION

The Veteran had active service from January 1989 to March 1993. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision of the Department of Veterans Affairs (VA), Regional Office (RO), in Pittsburgh, Pennsylvania, that, in pertinent part, granted service connection for right ankle sprain and residuals of a left knee laceration, and assigned initial disability ratings. The Veteran has appealed the initial disability ratings assigned.

In October 2011, the Veteran testified at a video conference hearing over which the undersigned Veterans Law Judge presided. A transcript of that hearing has been associated with his claims file.

This case was previously before the Board in February 2012 at which time it was remanded for additional development. 

The appeal is REMANDED to the Department of Veterans Affairs Regional Office. VA will notify the appellant if further action is required.



REMAND

In the February 2012 remand, the Board directed that the Veteran be afforded a VA examination to determine the level of severity of his service-connected left knee and right ankle disorders. The Veteran was examined by VA in July 2013, and the results of the examinations have been associated with the claims file.

Approximately one week following the July 2013 VA examination, the RO received correspondence from the Veteran in which the Veteran expressed his dissatisfaction with the examinations. Specifically, the Veteran asserted that the examinations were cursory in nature (taking approximately 15 minutes) and that the examiner did not inquire as to extent of the Veteran's current symptoms, to include pain. The Veteran added that the examiner did not ask him about functional loss, instability, fatigability, weight bearing, limitations of normal daily activity, or other relevant symptoms or characteristics of the conditions. The Veteran also indicated that the examiner did not elicit sufficient details regarding the extent of his left knee scar, to include sensitivity to pain. The Veteran further indicated that the VA examiner did not address symptoms associated with the right ankle disability that were not enumerated in the Disability Benefits Questionnaire (DBQ), to specifically include limitation of eversion and inversion. Finally, the Veteran indicated that he was endeavoring to obtain his own examination to be used as evidence in his claim.

Unless a claimant challenges the adequacy of the examination or opinion, the Board may assume that the examination report and opinion are adequate, and need not affirmatively establish the adequacy of the examination report or the competence of the examiner. Sickels v. Shinseki, 643 F.3d, 1362, 1365-66 (Fed. Cir. 2011) (although the Board is required to consider issues independently raised by the evidence of record, the Board is still "entitled to assume" the competency of a VA examiner and the adequacy of a VA opinion without "demonstrating why the medical examiners' reports were competent and sufficiently informed"); see also Rizzo v. Shinseki, 580 F.3d 1288, 1290-1291 (Fed. Cir. 2009) (the Board is entitled to assume the competency of a VA examiner unless the competence is challenged). 

Here, the Veteran has challenged the adequacy of the July 2013 examinations. In reviewing the findings set forth in the July 2013 examination reports, the Board finds that while the VA examiner appears to address the symptoms questioned by the Veteran in his correspondence, the adequacy of this examination is questionable as the examination report at times indicates that the Veteran did not have certain symptoms (such as instability) that the Veteran has consistently represented that he experiences. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). As such, in order to afford the Veteran every possibility to substantiate his claim, the Board finds that the Veteran be scheduled for another VA examination of the left knee and right ankle by a VA examiner who has not previously examined him, so as to assess the precise nature and severity of these service-connected disabilities.

Additionally, as the Veteran indicated in his July 2013 correspondence that he would be obtaining his own examination, he should be contacted and given the opportunity to submit any additional private medical records in support of his claim.

Finally, as this matter is being remanded for the reasons set forth above, any additional VA treatment records relating to the Veteran's service-connected right ankle and left knee disabilities should also be obtained. See 38 U.S.C.A. § 5103A(b), (c); 38 C.F.R. § 3.159(b); see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim). 

Accordingly, the case is REMANDED for the following action:

1. The agency of original jurisdiction shall take appropriate steps to contact the Veteran and request that he identify all VA and non-VA health care providers (to include any private examination reports evaluating the service-connected right ankle or left knee disability), other than those already associated with the Veteran's claims file, that have treated him since service for his claimed disabilities. This shall specifically include updated treatment records from VA. The aid of the Veteran in securing these records, to include providing necessary authorization(s), should be enlisted, as needed. If any requested records are not available, or if the search for any such records otherwise yields negative results, that fact should clearly be documented in the claims file, and the Veteran informed in writing. The Veteran may submit medical records directly to VA.

2. The agency of original jurisdiction shall arrange for the Veteran to undergo VA orthopedic examination by an examiner who has not previously examined the Veteran for the purpose of ascertaining the current severity of his service-connected left knee disability. The claims file, to include a copy of this remand, must be made available to the examiner for review. 

The examiner must conduct all necessary testing of the knee, including range-of-motion studies (measured in degrees). The examiner must determine whether there are objective clinical indications of pain or painful motion; weakened movement; premature or excess fatigability; or incoordination; and these determinations must be equated to additional range-of-motion lost due to such factors (beyond what is shown clinically). This includes instances when these symptoms "flare-up" or when the knee is used repeatedly over a period of time. This should be done for both flexion and extension. The examiner must also specify whether the Veteran has any instability in the knee and, if so, the severity thereof (e.g., slight, moderate or severe), and whether there are episodes of locking. The examiner should identify each specific problem related to the service-connected laceration residuals and distinguish those problems from those that are not related.


The examiner must identify all current manifestations of any residual scars of the knee due to laceration. If, in addition to scarring, any muscle and/or neurological impairment is identified, the examiner shall indicate whether each such impairment constitutes a distinct disability.

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. If the examiner rejects the Veteran's reports of symptomatology, he or she must provide a reason for doing so.

3. The agency of original jurisdiction shall arrange for the Veteran to undergo VA orthopedic examination by an examiner who has not previously examined the Veteran for the purpose of ascertaining the current severity of his service-connected right ankle disability. The claims file, to include a copy of this remand, must be made available to the examiner for review. 

The examiner must identify all residuals attributable to the Veteran's service-connected right ankle disability. 

The examiner shall include range-of-motion findings for the right ankle. The examiner is requested to specify whether the right ankle is ankylosed in any position. If so, the examiner shall identify the specific position in which the joint is ankylosed. In so doing, the examiner must clarify the precise definition of ankylosis of the ankle joint. 

If the examiner finds that there is ankylosis of the right ankle, it should be specifically indicated whether the right ankle is ankylosed in plantar flexion less than 30 degrees; in plantar flexion, between 30 and 40 degrees; in dorsiflexion, between zero and 10 degrees; in plantar flexion at more than 40 degrees; or in dorsiflexion at more than 10 degrees; or with abduction, adduction, inversion or eversion deformity. 

The examiner should also provide an opinion on whether the plantar flexion to 53 degrees as noted on April 2009 VA examination represents a disorder analogous to moderate or marked disability of the right ankle.

The examiner must determine whether there are objective clinical indications of pain or painful motion; weakened movement; premature or excess fatigability; or incoordination; and these determinations must be equated to the degree of additional range-of-motion lost (beyond what is shown clinically) due to such factors. This includes instances when these symptoms "flare-up" or when the ankle is used repeatedly over a period of time. 

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. If the examiner rejects the Veteran's reports of symptomatology, he or she must provide a reason for doing so.

4. The agency of original jurisdiction will then review the Veteran's claims file and ensure that the foregoing development actions have been completed in full, and that no other development action, in addition to those directed above, is required. If further action is required, it should be undertaken prior to further adjudication.

5. The agency of original jurisdiction will thereafter readjudicate the Veteran's claims. If a benefit sought remains denied, the Veteran and his representative should be provided with a Supplemental Statement of the Case. An appropriate period of time should be allowed for response before the case is returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This case must be afforded expeditious treatment. Claims remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



________________________________
MARK F. HALSEY
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2013).