Citation Nr: 1722262 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 08-31 174 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado


THE ISSUES

1. Entitlement to a rating higher than 10 percent prior to October 2, 2008, from December 1, 2008 to June 6, 2011, and from August 1, 2011 to May 8, 2015, for right knee sprain and patellofemoral pain syndrome. 

2. Entitlement to a rating higher than 10 percent prior to May 4, 2009 and from July 1, 2009 to May 8, 2015, for left knee retropatellar pain syndrome. 

3. Entitlement to a rating higher than 60 percent for gout of both knees from May 8, 2015. 

4. Entitlement to a rating higher than 10 percent for rhinosinusitis. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

M. Mac, Counsel


INTRODUCTION

The Veteran served on active duty from August 1986 to September 1995. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions dated in January 2008 and August 2011 of a Regional Office (RO) of the Department of Veterans Affairs (VA). 

In the January 2008 rating decision the RO denied entitlement for a rating higher than 10 percent for the right knee and left knee. In a February 2009 rating decision the RO granted a temporary 100 percent rating from October 2, 2008 to November 30, 2008 for the right knee due to an arthroscopy and an abrasion chondroplasty of the patella requiring convalescence. In a rating decision in August 2011 the RO granted a temporary 100 percent rating from June 7, 2011 to July 30, 2011 for the right knee based on surgical treatment necessitating convalescence. In a rating decision in June 2009 the RO granted a temporary 100 percent rating from May 4, 2009 to June 30, 2009 for the left knee based on an arthroscopy and patellofemoral surface debridement necessitating convalescence. 

In April 2013, the Veteran appeared at a hearing before the undersigned Veterans Law Judge. A transcript of the hearing is in the record. 

As for the knees, in September 2013 the Board remanded the issues for higher ratings for the right knee and left knee. In April 2015 the Board denied the Veteran's claims of entitlement to a rating higher than 10 percent prior to October 2, 2008, from December 1, 2008 to June 6, 2011, and from August 1, 2011, for right knee sprain and patellofemoral pain syndrome. The Board also denied the Veteran's claim of entitlement to a rating higher than 10 percent prior to May 4, 2009 and from July 1, 2009 for left knee retropatellar pain syndrome (and remanded the issue of entitlement to a rating higher than 10 percent for rhinosinusitis for further development). The Veteran then appealed the Board's denial of the increased rating claims for the knees to the U.S. Court of Appeals for Veterans Claims (Court). In a September 2016 memorandum decision, the Court vacated and remanded the April 2015 Board decision denying the Veteran's claims of entitlement to a rating higher than 10 percent prior to October 2, 2008, from December 1, 2008 to June 6, 2011, and from August 1, 2011, for right knee sprain and patellofemoral pain syndrome; and, the Veteran's claim of entitlement to a rating higher than 10 percent prior to May 4, 2009 and from July 1, 2009 for left knee retropatellar pain syndrome. 

In a rating decision in August 2015 the RO granted service connection for gout of both knees and the great toes and assigned an evaluation of 60 percent effective May 8, 2015, noting that as the evaluation included the previously separate 10 percent evaluations of patellofemoral pain syndrome of the left and right knees these evaluations were closed out in order not to violate 38 C.F.R. § 4.14, which prohibits evaluating the same disability under multiple diagnoses. The RO further noted that such action was more advantageous to the Veteran as it afforded him a higher combined rating. Thus the issues pertaining to the knees have been characterized as indicated on the title page. The Board notes that as the evaluations of the great toes are not currently in appellate status they are not included in the issue of entitlement to a higher rating for gout in both knees. 

As for the rhinosinusitis, in September 2013 the Board granted a 10 percent rating for rhinosinusitis. The Veteran then appealed the issue of entitlement to a rating higher than 10 percent for rhinosinusitis to the Court. In a September 2014 memorandum decision, the Court vacated and remanded the September 2013 Board decision denying entitlement to a rating higher than 10 percent for rhinosinusitis, including extraschedular consideration. In April 2015, the Board remanded this issue for further development. In March 2016 the Board denied the Veteran's claim of entitlement to a rating higher than 10 percent for rhinosinusitis. The Veteran appealed this decision to the Court. In February 2017 the Court granted a Joint Motion for Remand (Joint Motion) dated in February 2017. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


REMAND

As for the knees, the Court in the September 2016 memorandum decision determined that the Board in the April 2015 decision appeared to require objective evidence of recurrent subluxation or lateral instability without establishing that such evidence is a necessary predicate to a separate disability rating under Diagnostic Code 5257. The Court noted that the Veteran throughout the appeal period consistently complained of bilateral knee instability. Thus in order to comply with the Court's directives a remand is necessary for the Veteran to be afforded a new VA examination of the knees in order for the examiner to reconcile the inconsistencies between the Veteran's assertions of bilateral knee instability and the medical evidence showing that he does not have recurrent subluxation or lateral instability in his knees. 

Further, during the appeal period the Court in Correia v. McDonald, 28 Vet. App. 158 (2016) emphasized that 38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and non-weight-bearing. Such findings were not completely provided in the November 2007, April 2012, October 2013, and June 2015 VA examinations that evaluated the range of motion of the Veteran's knees. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Although the Veteran from May 2015 is in receipt of a 60 percent rating combined rating for the knees, and the highest rating under Diagnostic Code 5260 for limitation of knee flexion is 30 percent and the highest rating under Diagnostic Code 5261 for limitation of knee extension is 50 percent, the RO in the August 2015 rating decision granted a 60 percent rating for gout of the knees effective May 8, 2015 pursuant to Diagnostic Codes 5017 and 5002 based on gout as an active process, noting the evaluation is not considered permanent as there is a likelihood of improvement. Thus on remand, in addition to attempting to obtain retrospective opinions regarding range of motion findings of both knees that comply with Correia, the new VA knee examination should also include joint testing for pain on both active and passive motion, in weight-bearing and non-weight-bearing.

As for the rhinosinusitis, the parties to the February 2017 Joint Motion agreed that the Board relied upon an October 2015 VA examination where it is unclear whether the examiner adequately considered the Veteran's history of frequent headaches in evaluating the rhinosinusitis. The parties emphasized that the Veteran's headaches were previously considered to be part of his rhinosinusitis, noting that the Court in the earlier memorandum decision was hesitant to make a finding in the first instance as to the applicability of Diagnostic Code 8100 for migraine headaches. Thus another VA examination is necessary to comply with the Joint Motion's directives. 

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a VA examination for his knees. The claims folder should be made available to and reviewed by the examiner in connection with the examination. All indicated tests and studies should be performed.

a.) The examiner should determine whether there is instability or recurrent subluxation of the right knee and left knee; and if so, this determination should be expressed in terms of slight, moderate, or severe due to either the lateral instability or recurrent subluxation. The examiner must address and reconcile inconsistencies between the Veteran's assertions throughout the appeal period that he has bilateral knee instability and the medical evidence of record that shows the Veteran does not have recurrent subluxation or lateral instability (see VA examinations dated in April 2012 and October 2013). In so doing, the examiner must specifically address the Veteran's use of any assistive devices such as canes and braces and discuss the Veteran's assertions that the has bilateral knee instability. See, e.g., Veteran's reports documented on VA examinations in November 2007 and October 2013; in a March 2010 VA treatment record; and, testimony and statements dated in April 2013, February 2014, and October 2014. The examiner should also address a February 2009 medical record that shows the Veteran had mild to moderate lateral subluxation in both knees during dynamic activities. 

b.) The evaluation of the Veteran's right knee and left knee should include all necessary testing, specifically range of motion studies to be expressed in degrees. The examiner must determine any range of motion movements that are painful on active use, passive use, repetitive use, in weight-bearing, and non-weight-bearing. The examiner should address the range of motion in degrees of flexion and extension and any functional loss due to pain or painful motion as well as weakness, excess fatigability, incoordination, or pain on movement, swelling or atrophy. The examiner must address at what point pain sets. Any additional functional loss should be expressed in terms of additional limitation of motion. The examiner should also address whether there is additional loss of motion associated with flare-ups or on repetitive use. 

c.) The examiner must also address whether there is ankylosis, dislocated semilunar cartilage in the knees and whether there is effusion, whether the knee locks and if so the frequency of the locking. 

d.) The examiner should address whether gout in both knees is an active process that is totally incapacitating with constitutional manifestations associated with active joint involvement. 

e.) If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so. 

f.) The examiner also is asked to review the other VA examinations during the appeal period, to include ones dated in November 2007, April 2012, and October 2013 and based on the findings of those examinations, to the extent possible, provide a retrospective opinion regarding the range of motion movements in both knees that would be painful on passive use, in weight-bearing and non-weight-bearing. 

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports must be acknowledged and considered in formulating any opinion.

The examiner is asked to provide a rationale for all opinions rendered. If the examiner is not able to provide an opinion, he or she should explain why.

2. Schedule the Veteran for an appropriate VA examination to determine the current severity of the service-connected rhinosinusitis. The claims folder should be made available to the examiner and all appropriate tests and studies should be accomplished, and all clinical findings should be reported in detail. 

The examiner is asked to address the following: 
 
a.) Whether the Veteran's rhinosinusitis is manifested by headaches with characteristic prostrating attacks that occur on an average once a month over the last several months? Or, are the headaches associated with the rhinosinusitis frequent and completely prostrating with prolonged attacks which are productive of severe economic inadaptability? In doing so, the examiner must address the Veteran's contention that his sinus infections are accompanied by headaches. See April 2013 Board hearing transcript. The examiner also should discuss the Veteran's frequent history of headaches noted in a May 2007 VA treatment record. 

b.) Whether the Veteran's rhinosinusitis is manifested by three or more incapacitating episodes per year requiring prolonged (lasting four to six weeks) antibiotic treatment, or; more than six non-incapacitating episodes per year characterized by headaches, pain, and purulent discharge or crusting? The General Rating Formula for Sinusitis provides that an incapacitating episode of sinusitis means one that requires bed rest and treatment by a physician.

c.) Whether the Veteran has greater than 50 percent obstruction of nasal passage on both sides or complete obstruction on one side; or, whether he has polyps. 

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports must be acknowledged and considered in formulating any opinion.

The examiner is asked to provide a rationale for all opinions rendered. If the examiner is not able to provide an opinion, he or she should explain why.

3. The AOJ must review the medical opinions/examinations obtained above to ensure that the remand directives have been accomplished. If all questions posed are not answered or sufficiently answered, the case should be returned to the examiner for completion of the inquiry.
 
4. When the development requested has been completed, the case should be reviewed by the AOJ on the basis of additional evidence. If any benefit sought is not granted, the Veteran and his representative should be furnished a Supplemental Statement of the Case and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.
 
The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




_________________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).