﻿Citation Nr: AXXXXXXXX
Decision Date: 06/20/19 Archive Date: 06/19/19

DOCKET NO. 190325-6538
DATE: June 20, 2019

ORDER

Entitlement to an initial disability rating in excess of 50 percent for service-connected posttraumatic stress disorder (PTSD), from November 16, 2017, the date of service connection, to October 20, 2018, is denied.

REMANDED

Entitlement to service connection of hypertension is remanded.

Entitlement to service connection of left lower extremity peripheral neuropathy is remanded.

Entitlement to service connection of right lower extremity peripheral neuropathy is remanded.

Entitlement to service connection of vertigo is remanded.

FINDING OF FACT

The Veteran’s service-connected PTSD has resulted in, at most, occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; panic attacks more than once a week; disturbances of motivation and mood; and difficulty in establishing and maintaining effective social relationships.

CONCLUSION OF LAW

The criteria for a rating in excess of 50 percent for service-connected PTSD, from November 16, 2017, to October 20, 2018, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.7, 4.130, Diagnostic Code 9411.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from July 1956 to July 1976, for a total of 20 years with confirmed periods of service via DD-214 from December 1958 to December 1964, July 1927 to July 1976.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from July 2018 and October 2018 rating decisions issued by a Department of Veterans Affairs (VA) Regional Office (RO). 

The Veteran selected the Direct Review lane by submitting notice of disagreement under the appeals Modernization Act (AMA) in March 2019. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). Accordingly, the Board is limited to review of the evidence in the record up and until the date of the rating decisions on appeal; for the issue adjudicated below, that date is October 20, 2018.

In March 2019, shortly after the Veteran filed his notice of disagreement, electing the Direct Review Lane, the Veteran submitted additional statements regarding the severity of his PTSD, as well as an application for total disability based on individual unemployability (TDIU). To the extent that this constitutes new evidence as to the severity of the Veteran’s PTSD, because it was filed after October 20, 2018, the Board may not review it in adjudicating this appeal. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 20.300). If the Veteran wishes to seek a later increase in disability for his PTSD, he may file a Supplemental Claim and submit or identify this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501). If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

To the extent that the Veteran has also claimed entitlement to TDIU, a claim for TDIU is considered part and parcel of any claim for an increased rating, when reasonably raised by the record. Rice v. Shinseki, 22 Vet. App. 447 (2009). However, the period on appeal for Rice to apply under the AMA must mirror the period on appeal for the increased rating claim from which it arose. In this matter, because the Veteran did not file his claim for TDIU until after the appeal period closed, and because his claim indicates it is due to worsening based on evidence filed after the close of the appeal period, which the Board may not consider, the Board finds that TDIU is not part and parcel of the increased rating claim presently on appeal. The Board does recognize that VA has acknowledged that claim as pending independently based on the March 2019 submission. 

1. Entitlement to an initial disability rating in excess of 50 percent for service-connected posttraumatic stress disorder (PTSD)

The Veteran seeks an initial disability rating in excess of 50 percent for service-connected PTSD. The Board finds that the claim should be denied. 

Disability ratings are determined by the application of a schedule of ratings, which is based on the average impairment of earning capacity. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The Veteran’s entire history is reviewed when making disability evaluations. See generally, Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 4.1. Where, as in the case of the disability on appeal, the question for consideration is the propriety of the initial evaluation assigned, consideration of the medical evidence since the effective date of the award of service connection and consideration of the appropriateness of staged ratings are required. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). Further, “[w]here there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned.” 38 C.F.R. § 4.7.

The Veteran’s PTSD is rated under diagnostic code 9411, which compensates specifically for PTSD and applies the general rating formula for mental disorders. Under the applicable criteria, a 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411.

A 70 percent rating is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. Id.

Finally, a 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

The Veteran submitted an intent to file form on November 16, 2017, with his formal claim of service connection for PTSD following on March 22, 2018. Evidence in the record shows that on March 13, 2018, the Veteran reported a history of nightmares for years, reporting that he “is always fighting somebody but I don’t know the reason.” He denied suicidal or homicidal ideation at that time. He was oriented to person, place and time, and exhibited normal mood and affect. 

In July 2018, he was afforded a VA examination in connection with his service connection claim. He reported being married to his third wife since 1988. He has two children, whom he said he did not see very often due to them living out of state, but with whom he has a positive relationship. He denied having friends. He reported a work history to include seven years working for John Deere (leaving due to economic lay-offs), running a convenience store he owned, and working for six years in a meat packing plant. He voluntarily retired in 1999. He denied seeking psychiatric treatment or hospitalizations. He denied any prior suicide attempts. The examiner diagnosed PTSD, directly related to active service, manifesting in occupational and social impairment with reduced reliability and productivity. He also diagnosed alcohol use disorder but noted that the Veteran had been sober for five years. Symptoms reported by the Veteran included anxiety; suspiciousness; panic attacks more than once a week; chronic sleep impairment; flattened affect, disturbances of motivation and mood; and inability to establish and maintain effective relationships. He denied suicidal ideation. The examiner observed that he was alert, verbal, and succinct with his responses. His mood was anxious with congruent affect. He had fair to good eye contact and was observed as having good hygiene. He was dressed appropriately for the weather. He answered questions easily and remained polite throughout. No psychotic symptoms were observed. He was capable of managing his own financial affairs. The examiner noted that, absent a recent work history (the Veteran was retired), it was difficult to judge occupational impairment. With regard to social impairment, he reported being dependent upon his wife for social and emotional help, as well as running the household. 

The Board has carefully reviewed the other evidence of record pertaining to the period on appeal but finds nothing else which would assist it in evaluating the Veteran’s increased rating claim.

The Board finds that this evidence supports no greater than a 50 percent initial rating for PTSD. The Veteran’s PTSD has resulted in reduced reliability and productivity due to such specific symptoms as flattened affect, disturbances of motivation and mood, and difficulty establishing and maintaining effective social relationships. However, there is no evidence that his symptoms affect “most areas.” While mood is certainly affected, and he has shown some issues with work, his family life is generally good, and he has not shown any evidence is issue with learning capacity, judgment, or thinking. Further, he has not shown any symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene. Finally, the Board notes that there is no evidence of any symptoms which would be productive of a 100 percent, total rating under the diagnostic criteria. Therefore, the Board finds that the initial evaluation assigned at 50 percent is the maximum rating supported by this examination.

Although the general rating formula provides specific examples of symptoms that may result from various acquired psychiatric disorders, the Board emphasizes that its analysis should not be limited to only these symptoms but should also consider any other relevant criteria outside of the rating code in order to determine the level of occupational and social impairment. Mauerhan v. Principi, 16 Vet. App. 436, 444 (2002). As such, the Board has also considered the extent to which there are other indications of occupational and social impairment, such as difficulty in adapting to stressful circumstances or the inability to establish and maintain effective relationships that may cause occupational and social impairment in either most areas, or on a total basis. 

In this regard, it is clear that the Veteran’s disorder reflects an impact on his social and occupational functioning. Nevertheless, the evidence does not indicate that a rating in excess of 50 percent is warranted. Specifically, he maintains good family relationships. There is no evidence that he is incompetent to handle his own financial affairs. He has not provided any other evidence which would imply such severe symptoms. Therefore, his level of social occupational impairment during the period on appeal does not rise to the level of affecting “most areas” or to the level of “total,” even when factoring in other relevant criteria outside of the rating code. See Mauerhan v. Principi, 16 Vet. App. 436, 444 (2002).

In sum, the Board finds that the evidence of record shows that the Veteran’s service-connected psychiatric disability has not resulted in occupational and social impairments in most areas such as work, school, family relations, judgment, thinking, and mood; nor is there any evidence of total occupational and social impairment. As such, the evidence does not support a rating in excess of the 50 percent assigned from the date of service connection and the claim is denied. See 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet App. 49 (1990); 38 C.F.R. § 3.102. 

REASONS FOR REMAND

1. Entitlement to service connection of hypertension is remanded.

2. Entitlement to service connection of left lower extremity peripheral neuropathy is remanded.

3. Entitlement to service connection of right lower extremity peripheral neuropathy is remanded.

4. Entitlement to service connection of vertigo is remanded.

With regard to the remaining issues before the Board, the Board finds that the RO failed to comply with the duty to assist in providing adequate medical opinions following the Veteran’s VA examinations. 

“[O]nce the Secretary undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, he must provide an adequate one.” Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). A medical opinion will be considered adequate when it is based upon consideration of the Veteran’s prior medical history and examinations and provides a sufficiently detailed description of the disability so that the Board’s “evaluation of the claimed disability will be a fully informed one.” Id. (internal quotation marks omitted); Green v. Derwinski, 1 Vet. App. 121, 124 (1991).

The Board finds that adequate rationales were not provided for the negative etiology opinions pertaining to the claimed hypertension and bilateral lower extremity peripheral neuropathy. Particularly, with regard to the claims for neuropathy, the examiner merely states that the claims file does not demonstrate chronicity of care for this condition. However, in his examination, the Veteran reported onset of numbness and pain in his feet during the 1970’s. Although not explicitly documented in his service treatment records, a lay person is competent to report observable symptomatology, such as pain. Barr, 21 Vet. App. at 307-08. The record does not reflect that his report is in anyway less than credible, and if the examiner found this report as such, there is no discussion as to why. 

Likewise, concerning the claim for hypertension, the examiner stated “the [V]eteran has a history of hypertension. The claims file does not demonstrate a service connection to the hypertension.” A medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two. See Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). In this case, there simply does not exist adequate discussion of the Veteran’s medical history and rationale for the opinion rendered for the Board to rely upon it in evaluating the claim. 

Finally, with regard to the claim of service connection of vertigo, the examiner concluded that any vertigo was less likely than not related to service because the Veteran denied having a history of ear conditions or having any current ear condition during the examination. However, upon review, the Board notes that as recently as April 2018, VA audiology records document vertigo, described as an imbalance upon standing which has led him to fall a couple of times. This raises the question of whether the Veteran does, in fact, have a present diagnosis of vertigo. 

The matter is REMANDED for the following action:

1. Obtain an addendum opinion from an appropriate clinician regarding whether the Veteran’s hypertension either had onset during service or is otherwise related to any incident of active service, to include his May 1969 diagnosis of borderline hypertension. The examiner should provide a detailed description of the Veteran’s disability as well as a well-reasoned rationale for any opinion given, to include citation to evidence in the record, and known medical principles.

2. Obtain an addendum opinion from an appropriate clinician regarding whether the Veteran’s bilateral lower extremity peripheral neuropathy had onset during service or is otherwise related to any incident of active service. The examiner should provide a detailed description of the Veteran’s disability as well as a well-reasoned rationale for any opinion given, to include citation to evidence in the record, and known medical principles. The examiner is reminded that the Veteran is competent to report observable symptoms such as pain, and a continuity of those symptoms since onset.

3. Obtain an addendum opinion from an appropriate clinician regarding whether the Veteran has a present diagnosis of vertigo. In doing so, the examiner must discuss the April 2018 audiology report which purported to diagnose vertigo in the Veteran. If the examiner finds a present diagnosis of vertigo during any period on appeal (prior to July 30, 2018), the examiner should state whether it is at least as likely as not related to any incident of active service, to include conceded noise exposure, or alternatively caused or aggravated by his service-connected hearing loss and tinnitus. In rendering the requested opinion, the examiner should provide a detailed description of the Veteran’s disability as well as a well-reasoned rationale for any opinion given, to include citation to evidence the record, and known medical principles.

 

JEBBY RASPUTNIS

Acting Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD M. Pryce, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.